Mickie Gean JOHNSON *v.* STATE of Arkansas

CR 93-402                                                863 S.W.2d 305

Supreme Court of Arkansas
Opinion delivered October 25, 1993
[Supplemental Opinion on Denial of Rehearing
December 13, 1993.*]

---

*Dudley & Newbern, JJ., would grant rehearing.

*Doug Norwood,* for appellant.

*Winston Bryant,* Att'y Gen., by: *J. Brent Standridge,* Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. This case involves a consideration of the Arkansas implied consent law, codified at Ark. Code Ann. §§ 5-65-202, 5-65-205 (Supp. 1991), and the effectiveness of a waiver of trial by jury. We hold that the appellant effectively waived his right to trial by jury and that his assessments of our implied consent law and a police implied-consent admonition form are of no moment.

The appellant, Mickie Gean Johnson, was arrested by State Trooper Mark Meadows on July 26, 1991, for driving while intoxicated, fleeing, and violation of the implied consent law. He was tried in the Prairie Grove Municipal Court in January 1992 and was found guilty of DWI and violation of the implied consent law. The court found him not guilty on the charge of fleeing. Following a *de novo* bench trial before the Washington County Circuit Court in July 1992, Johnson was again found guilty of DWI and violation of the implied consent law. The appellant raises three issues for reversal.

## I. WAIVER OF TRIAL BY JURY

Johnson's first point addresses essentially the same question that we recently considered in *Bolt* v. *State,* 314 Ark. 387, 862 S.W.2d 841 (1993), where we found that an attorney's waiver of his client's right to a jury trial, made in open court and in the presence of the defendant, satisfied the requirement of Ark. R. Crim. P. 31.2 that such a waiver be made "personally." Johnson contends that the trial court erred in not granting him a trial by jury. He asserts that the circuit court failed to obtain a valid waiver of his right to a jury trial because it did not address him personally and elicit a knowing, intelligent, and voluntary waiver. We disagree.

Johnson's argument is based primarily upon two recent DWI cases which we considered in *Bolt: Calnan* v. *State,* 310

Ark. 744, 841 S.W.2d 593 (1992), and *Winkle* v. *State*, 310 Ark. 713, 841 S.W.2d 589 (1992), in which we declared that, under the Arkansas Constitution and the Arkansas Rules of Criminal Procedure, a criminal defendant is entitled to receive a trial by jury unless the right is waived in the manner provided by law.

As we noted in *Calnan* v. *State, supra,* the "manner prescribed by law" for waiver in a criminal trial is set forth in Rules 31.2 and 31.3 of the Arkansas Rules of Criminal Procedure. Rule 31.2 provides that:

> Should a defendant desire to waive his right to trial by jury, he must do so personally either in writing or in open court. A verbatim record of any proceedings at which a defendant waives his right to a trial by jury shall be made and preserved.

Rule 31.3 states that "In misdemeanor cases, where only a fine is imposed by the court, a jury trial may be waived by the defendant's attorney. . . ."

The two cases cited by Johnson, although superficially similar to the present set of circumstances, bear marked differences, as we noted in comparing the corresponding situation in *Bolt.* In *Calnan,* the appellant was tried in Rogers Municipal Court and found guilty of DWI, disorderly conduct, violation of the implied consent law, and speeding. She appealed to the circuit court and, in a *de novo* bench trial, was found guilty of all charges except speeding. No mention was made of a trial by jury by either party or the court. On appeal, Calnan asserted that she had not waived her right to a jury trial, and this court agreed, noting that a waiver is an "intentional relinquishment of a known right," 310 Ark. at 748, 841 S.W.2d at 595, and that, under the rules of criminal procedure, the only way a waiver of a jury trial can be effected is "by personally making an express declaration in writing or in open court," 310 Ark. at 747, 841 S.W.2d at 595, the proceedings of which must be preserved.

In *Winkle* v. *State, supra,* the defendant faced a more serious charge — DWI, third offense, in addition to driving on a suspended license and hindering apprehension or prosecution — but, like the defendant in *Calnan,* neither he nor his attorney asked for a jury trial or offered any objection to the bench

proceedings. Citing *Elmore* v. *State*, 305 Ark. 426, 809 S.W.2d 370 (1991), we stated that, under the state constitution and rules of criminal procedure, a defendant is entitled to be tried by a jury without making such a motion. Further, we emphasized that a waiver of a jury trial is constitutionally permissible only when it is made in accordance with the provisions of the rules of criminal procedure.

The record in the case now before this court, unlike the transcripts in *Calnan* and *Winkle*, is far from silent on the question of waiver. In fact, it is quite similar to the record in *Bolt*, which reflects that the defendant's attorney, in open court and in his client's presence, formally waived "any requirement of a jury trial in this matter." *See* 314 Ark. at 387, 862 S.W.2d at 841.

At the beginning of Johnson's bench trial, the circuit court acknowledged the appellant's presence, calling him by his full name. During the defense counsel's closing argument, the following exchange occurred:

THE COURT:. . . As I understand it, the defendant in this particular case has waived his right to a jury trial.

MR. NORWOOD: That's correct, Your Honor.

THE COURT: Is that not correct?

MR. NORWOOD: Yes, we have a bench trial, yes.

THE COURT: Well, I just wanted to be certain about that.

MR. NORWOOD: Oh, no, there's no problem with that, Judge.

THE COURT: Okay, fine. You may proceed.

MR. NORWOOD: What I'm saying is even if we had had a jury —

THE COURT: I understand . . . your argument. I just wanted to make it clear for the purpose of the record that you waived your right to a jury trial in this case, the case we're trying here today.

MR. NORWOOD: Right.

■ The distinction between the *Calnan* and *Winkle* cases and Johnson's situation — and the analogy with *Bolt* — is clear. Where nothing was said one way or the other about waiver during the trials in the earlier cases, defense counsel in the present matter affirmed "in open court" (as Ark. R. Crim. P. 31.2 puts it) that Johnson's right to trial by jury had been waived. Moreover, like the attorney in *Bolt*, defense counsel here, in the presence of the appellant, explicitly submitted the case to the court for a bench trial. Under the circumstances of the present case, Johnson was bound by his attorney's action.

## II. IMPLIED CONSENT LAW

The appellant argues in his second point for reversal that the Arkansas implied consent law — and specifically Ark. Code Ann. § 5-65-205 (Supp. 1991) — is facially unconstitutional because it removes from the jury's province the ability to determine whether the arresting officer had reasonable cause to believe the defendant had been driving while intoxicated. In closing argument, Johnson's attorney asserted that if his client had been tried by a jury, the implied consent law would have violated his right to trial by jury because the trial court, rather than the jury, would have determined whether the appellant had been guilty of refusing to submit to a chemical test.

The statutory section at issue provides:

> If the judge determines that the law enforcement officer had reasonable cause to believe the arrested person had been driving while intoxicated or while there was one-tenth of one percent (0.10%) or more of alcohol in the person's blood, and the person refused to submit to the test upon the request of the law enforcement officer, the judge shall order the Office of Driver Services to [suspend or revoke the operator's license].

Ark. Code Ann. § 5-65-205(c) (Supp. 1991).

■ The trial court declared the constitutional issue moot because "the defendant has specifically waived his right to a jury trial." Johnson's contention is based on a hypothetical proposition: had there had been a jury trial, the appellant's rights would have been jeopardized. But it is well established that this court does not answer academic questions. *Neely* v. *Barber*, 288 Ark.

384, 706 S.W.2d 358 (1986); *Crittenden County v. Williford,* 283 Ark. 296-A, 679 S.W.2d 795 (1984), *supp. op. on den. of reh'g; Venable v. State,* 260 Ark. 201, 538 S.W.2d 286 (1976). Nor does the Supreme Court issue advisory opinions. *Gladden v. Bucy,* 299 Ark. 523, 772 S.W.2d 612 (1989); *City of Springdale v. Jones,* 295 Ark. 129, 747 S.W.2d 98 (1988).

█ Moreover, Johnson's attorney waited until his closing argument to address the issue of the constitutionality of the implied consent law. Failure to object at the first opportunity to do so waives any right to raise the point on appeal. *Hill v. State,* 285 Ark. 77, 685 S.W.2d 495 (1985).

### III. IMPLIED-CONSENT ADMONITION FORM

Finally, Johnson urges that the trial court erred in refusing to dismiss the charge of refusing to submit to a chemical test on the basis that he was inadequately informed of the consequences of refusing to take the test. The language of Ark. Code Ann. § 5-65-205(c) (Supp. 1991), quoted above, states that "the judge *shall* (emphasis added) order the Office of Driver Services" to suspend or revoke the motor vehicle operator's license upon a judicial determination that the law enforcement officer had reasonable cause to believe that the arrested driver was DWI or while there was 0.10% of alcohol in the driver's blood and the driver refused to submit to a chemical test.

The consent form which Johnson signed contained the following notice:

> If I have reasonable grounds for believing you have been driving or have been in actual control of a motor vehicle while intoxicated or while impaired by alcohol or a controlled substance, I can request that you take a chemical test of my choosing to determine your blood alcohol and/or controlled substance content.

> If you refuse this test and a court later determines that I had proper cause to require you to take the test, then your driver's license *may* be suspended for six months or more. (Emphasis added.)

The arresting officer, Mark Meadows, testified that he read the rights and consent form to Johnson, who signed the line indicating

his refusal to take a chemical test. Johnson himself stated at trial that he had read the form and believed that the phrase "may be suspended" meant that "at least I had a chance of still keeping my license." He said that "I thought you didn't have to take the test, then you could go to court and argue about it."

Johnson cites two cases from other jurisdictions involving consent-form variants on statutory language. In *State* v. *Huber*, 540 N.E.2d 140 (Ind. App. 3 Dist. 1989), the Indiana implied consent law provided that "the refusal will result in the suspension of [the arrested person's] driving privileges." Ind. Code § 9-11-4-7(b) (1988). The appellate court found that the warning that "your license may be suspended for one year" was insufficient under the Indiana implied consent law, which "requires an advisement that refusal *will* result in suspension." 540 N.E.2d at 141.

In *Graves* v. *Commonwealth*, 535 A.2d 707 (Pa. Cmwlth. 1988), the commonwealth court found the arresting officer's implied consent warning insufficient to convey the mandatory nature of the suspension entailed by refusal to submit to a chemical test. The driver had been advised that he "could" lose his license as a consequence of his refusal to take the test. This, the court said, was "inadequate to convey the standard of certainty of the suspension that is mandated by the statute." 535 A.2d at 708. That statute, 75 Pa. Cons. Stat. § 1547(b)(2), provided that "It *shall* be the duty of the police officer to inform the person that the person's operating privilege *will be* suspended or revoked upon refusal to submit to a chemical test."

Arkansas, unlike Indiana and Pennsylvania, does not have a statutorily prescribed implied-consent admonition form. The General Assembly did not include such a requirement when it enacted the implied consent law. The United States Supreme Court has held that a defendant need not be apprised of the consequences of refusing to submit to a chemical test. *South Dakota* v. *Neville*, 459 U.S. 553 (1983). As we observed in another context: "The police should not be penalized for attempting to afford an unnecessary procedural safeguard to appellant." *Allen* v. *State*, 277 Ark. 380, 386, 641 S.W.2d 710, 714 (1982).

■ The trial court did not err in finding that the appellant had been adequately informed of the consequences of refusing to

take the prescribed chemical test.

Affirmed.

DUDLEY, J., concurs.

ROBERT H. DUDLEY, Justice, concurring. I concur in the result reached. I personally do not agree with all of the reasoning expressed in Point I, the point involving waiver of trial by jury. See dissenting opinion, Dudley, *Bolt* v. *State*, CR-93-281 (Ark. October 11, 1993). However, the majority has decided this issue, and I now accept that decision.

I write because of a concern I have with Point III, which involves an implied consent form. We have had a number of appeals involving these forms over the last decade, and some of the cases have demonstrated some confusion by the police about the advice to be given motorists who are arrested for driving while under the influence of intoxicants. Normally, the police are required to advise a motorist on three separate and distinct matters. These three are the detained motorist's *Miranda* rights, a request that the detainee take a chemical test, and that the detainee can have a second chemical test at his own expense. I write this concurring opinion solely for the benefit of a prosecuting attorney, city attorney, or deputy prosecutor or deputy city attorney, or police instructor, who might wish to advise police about the forms.

In many of the cases, the first thing that happens after a motorist is taken to the police station is the motorist is given a *Miranda* warning about his right against self-incrimination. The motorist is told that anything he says can and will be used against him, that he has a right to remain silent, and that he has a right to counsel. Shortly afterwards, an officer asks the motorist if he will take a chemical test of his blood, breath, or urine. Some motorists, having just heard their *Miranda* rights, choose to remain silent and ask for a lawyer before they take the test. *See Wright* v. *State*, 288 Ark. 209, 703 S.W.2d 850 (1986). The motorist may not understand the distinction between the *Miranda* warning against self-incrimination and consequences of the refusal to take a chemical test. They may not know they have already given an implied consent to the chemical test merely by operating an automobile, Ark. Code Ann. § 5-65-202 (Supp. 1993), or that

enforcement of the implied consent law does not violate the provision against self-incrimination, *Steele* v. *State*, 284 Ark. 340, 681 S.W.2d 354 (1984), or that the failure to take the test can result in the loss of one's driver's license. Ark. Code Ann. § 5-65-205 (Supp. 1993).

Thus, it would seem appropriate for the officer to first advise the motorist of his *Miranda* rights, and then to carefully tell the motorist that the chemical test is *not protected* under the *Miranda* warning and that the failure to take the chemical test will likely result in the loss of his driver's license. It seems only fair for the officer to make the distinction clear. Under the statutes, the policeman must still give a third warning to the motorist. He must advise the motorist that he can have an additional chemical test at his own expense if he so chooses. Ark. Code Ann. § 5-65-204(e) (Supp. 1993).

I concur in every respect with the majority opinion on this point in this case. I write this concurrence solely to set out the distinctness and separateness of the three warnings the police must give in conjunction with the implied consent to chemical test of motorists.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
DECEMBER 13, 1993

868 S.W.2d 43

*Doug Norwood*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. Mickie Gean Johnson urges, in his petition for rehearing, that, in the opinion recently handed down in this case, *Johnson v. State*, 314 Ark. 471, 863 S.W.2d 305 (1993), we erred in our application of *Bolt v. State*, 314 Ark.

387, 862 S.W.2d 841 (1993). More particularly, the appellant contends that we failed to mention the "two-part test announced in *Bolt*" regarding notice to the accused of a right to a jury trial and the presence of the accused in open court when the attorney makes the waiver.

*Bolt*'s two-tier ruling reads as follows:

> . . .while a defendant who desires to waive his right to a jury trial under Rule 31.2 must do so either in writing or in open court, his or her attorney may also make such a waiver so long as the defendant has acknowledged he or she had been informed of the right and the attorney waives the right in open court, on the record and in the defendant's presence.

314 Ark. at 390. At his arraignment, Bolt had been informed by the court of his right to a jury trial and had signed a form in which that right and others were set forth. Upon commencement of trial, his attorney, in open court, on the record, and in Bolt's presence, waived the right to trial by jury. We held this was sufficient.

It is true, as Johnson notes in his petition, that the record in his case is silent on the question of his personal acknowledgment of having been informed by the trial court or his attorney of his right to a jury trial, and it is true, as well, that our opinion does not specifically refer to that portion of the *Bolt* requirement. The record and the opinion both, however, reflect the fact that the appellant was present when waiver was accomplished, the circuit court acknowledging Johnson's presence by calling him by his full name in open court. *See* 314 Ark. at 474, 863 S.W.2d at 307.

Moreover, the open-court, on-the-record exchange between the trial court and Johnson's attorney reveals that the judge employed the term "right to a jury trial" at a time when Johnson was present in the courtroom. Specifically, counsel expressly confirmed no less than four times (in response to questions or comments by the court) that trial by jury had been waived. In the colloquy, conducted in Johnson's presence, his attorney stated that it was "correct" that Johnson had waived his right. He went on to declare that "Yes, we have a bench trial, yes," and to assure the trial court that "there's no problem with that. . . ." Finally,

when the judge stated, "I just wanted to make it clear for the purpose of the record that you waived your right to a jury trial in this case, the case we're trying here today," Johnson's attorney responded by saying, "Right." *Id.*

In our opinion, we compared the situation in the present case with that in *Bolt*, observing that, "like the attorney in *Bolt*, defense counsel here, in the presence of the appellant, explicitly submitted the case to the court for a bench trial." 314 Ark. at 475, 863 S.W.2d at 308. Stated another way, Johnson's presence at the time of waiver amounted to a tacit acknowledgment of his right to a jury trial. As we noted in our opinion, under these particular circumstances, he was bound by his attorney's actions.

Although a signed acknowledgment that one has been informed of his right to a jury trial, such as the one in the *Bolt* case, is certainly preferable, when, as in the present case, counsel repeatedly confirms waiver in open court, on the record, and in the defendant's presence, the defendant may not stand idly by and later cry foul.

The petition for rehearing is denied.

Dudley and Newbern, JJ., would grant rehearing.