Michael Lee GARRISON *v.* STATE of Arkansas

CR 94-802                                    893 S.W.2d 763

Supreme Court of Arkansas
Opinion delivered February 27, 1995

*G. Keith Watkins*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Michael Lee Garrison, raises two points for reversal of his aggravated robbery conviction and life sentence: (1) whether the trial court erred in denying his motion in limine, and (2) whether the trial court erred in admitting a knife similar to the one used in the crime as an exhibit. Neither has merit, and we affirm the trial court.

### Facts

Shortly before 10:00 a.m. on November 1, 1993, appellant Garrison and a companion, Judson Lee Dawson, entered a grocery store in Evening Shade, Sharp County, and asked the owner, Ray Thomas, for a pair of jersey gloves. Having none in stock,

he produced a pair of leather driving gloves, which the two young men examined.

They then asked for four slices of ham, which Mr. Thomas cut and wrapped. When the store owner rang up the charge for the meat, the two men disputed the weight. Mr. Thomas and the two men returned to the meat counter, and he weighed the slices again, allowing Garrison and Dawson to see the digital display.

According to Mr. Thomas's testimony at trial, as the three walked again from the meat counter to the check-out stand, Garrison struck him in the back of the head and tripped him. Then, while Mr. Thomas was on the floor, Garrison "started just beating and kicking and stomping and . . . finally got my head and tried to twist it around, and then he got something and went to cutting on my throat." Mr. Thomas stated that Garrison pushed the instrument "way in hard" and then jerked it out.

The victim pretended to be dead, and Garrison and Dawson shortly thereafter left the store. Mr. Thomas then got up, locked the door, and phoned for help. He was subsequently hospitalized for several days.

Law-enforcement authorities set up a roadblock in Sharp County at the intersection of State Highways 115 and 117. Garrison and Dawson passed through the roadblock in a gray, primer-coated pickup truck with a green tailgate, telling the police that they were going to the residence of Dawson's stepfather, James Richey. Police subsequently received information that a vehicle matching that description had been involved in an armed robbery. Shortly after, officers located the truck and the two suspects at Richey's residence. Garrison and Lawson were seated in a blue Ford Escort, owned by Richey, who consented to its search. The police discovered a roll of money beneath the seat and found more money on Dawson.

Garrison received his *Miranda* rights and gave a statement to the Sharp County sheriff. In it, he acknowledged tripping and kicking Mr. Thomas and cutting his throat with a "roofer knife," which he threw out of the truck window shortly afterward. The next day, an information was filed against Garrison and Dawson, charging them with aggravated robbery in violation of Ark. Code Ann. § 5-12-103 (Repl. 1993), a class Y felony. Garrison's

case was severed from Dawson's and following a jury trial, he was convicted of the aggravated robbery charge and was sentenced to life in prison.

### I. Motion in limine

Prior to trial, Garrison made a motion in limine to suppress certain evidentiary items seized from Dawson, consisting of $300 in cash (State's Exhibit 6D), $111 in cash (State's Exhibit 6C), a pair of gloves (State's Exhibits 7 and 8), and a knife purchased by one of the involved police officers for the purpose of evidentiary display (State's Exhibit 26). While the trial court did not rule on this motion during pre-trial proceedings, Garrison alluded to its pendency on several occasions during the course of trial, primarily when he raised timely objections to the introduction of the $300 cash and the purchased knife. As such, the admissibility of these items was properly preserved for purposes of appeal. The burden of obtaining a ruling on a motion in limine is on the appellant. *Gilland* v. *State*, 318 Ark. 72, 883 S.W.2d 474 (1994).

In the first instance, the State offered Exhibit 6D, the $300 in cash, as evidence, to which Garrison objected on the basis of his pending motion in limine. The trial court overruled the objection. Trooper Pardoe Roberts testified that he recovered the $300 from Dawson and that he turned the money over to Lieutenant Joe Stidman, who in turn stated that he marked each bill with his initials. Lieutenant Stidman then gave the money to Investigator Steve Huddleston, who testified that he carried it to the State Crime Lab for analysis. The Crime Lab returned the $300 to him by registered mail, and he kept it until the date of the trial.

Later, in a statement given to Investigator Huddleston, which was admitted into evidence without objection, Garrison said that Dawson got "a couple of hundred" dollars during the robbery and that Dawson "handled" the cash. The evidence showed that Garrison and Dawson were joint perpetrators of the armed robbery. There is no distinction between the criminal responsibility of a principal and that of an accomplice. *Smith* v. *State*, 310 Ark. 247, 837 S.W.2d 279 (1992). Thus, the admission of Exhibit 6D into evidence was not error.

■ Garrison also challenges the admission of Exhibit 6C, the $111 in cash, which was specifically mentioned in his motion in limine, but not ruled upon by the trial court. This exhibit, however, was admitted into evidence without objection, and the issue is not preserved for appeal. *Hall* v. *State*, 314 Ark. 402, 862 S.W.2d 268 (1993). In a somewhat analogous case, *Byrum* v. *State*, 318 Ark. 94, 884 S.W.2d 248 (1994), the trial court had made a preliminary ruling on the potential admissibility of hearsay testimony, but the appellant did not renew or request a final ruling on his objection or move to strike the hearsay testimony. This court held that he had thereby failed to make a timely objection at trial to the admission of the challenged statement and was thus precluded from raising the issue on appeal.

■ Similarly, Garrison failed to object to the introduction of Exhibits 7 and 8, a pair of gloves which were mentioned in the motion in limine but not ruled upon at that time by the trial court. By his failure to make a timely objection, Garrison waived any right to raise the point on appeal. *Johnson* v. *State*, 314 Ark. 471, 863 S.W.2d 305 (1993).

At trial, Garrison also objected to the introduction of Exhibit 26, a box-cutter knife characterized as being similar to the one used to cut Mr. Thomas's throat — an item also listed in the motion in limine. This evidentiary exhibit is the subject of Garrison's second point for reversal and will be considered in the discussion of that issue.

## II. Admission of knife

In a custodial interview with Sharp County Sheriff Sonny Powell that was admitted into evidence, Garrison stated that he threw the knife out of the moving truck after the robbery. In his second point for reversal, he argues that the trial court erred in admitting into evidence Exhibit 26, a box-cutter knife purchased, at the request of the prosecutor, by Lieutenant Stidman at an Ace Hardware Store the day before the trial began. Garrison preserved the issue for appeal by objecting in a timely manner to the introduction of the knife and by moving for a mistrial. The trial court overruled the objection and concurrent motion.

Garrison complains that there was no investigation undertaken by Lieutenant Stidman to determine whether the knife was

similar to the knife he had described in his statement to Sheriff Powell, as follows:

POWELL: Okay, uh, what kinda' knife was it?

GARRISON: It was a razor blade, little blue razor blade, uh, roofer knife, *I guess.*

POWELL: That you used to cut, uh,

GARRISON: Yes.

POWELL: Boxes or roofs, or stuff.

GARRISON: Roofs *or somethin' like that.*

POWELL: That the blade slid in an' out?

GARRISON: It slid in an' out an' broke off *an' stuff.*

(Emphasis added.) Garrison's responses did not constitute a model of clarity.

The following exchange between defense counsel and Lieutenant Stidman is illuminating in this context:

Q . . . Didn't you just testify that you went and purchased [the knife] at the instruction of Mr. Stallcup?

A Yes, sir.

Q Okay. So there was no independent investigation by you that determined that this instrument was similar to the one described by the defendant?

A Not by me, no.

Q Okay. So it's the State's conclusion that that's a similar instrument.

A You'll have to ask the State that.

Q Well, he's the one testifying it seems like.

A Yes.

Q Okay. In fact, did you check at Ace Hardware and see how long that type of box cutter had been in production?

A No, I did not.

Q  Do you even know if that type of box cutter was in production at the time of the crime?

A  No, I do not.

Q  Did you have any box cutters or any objects that you showed the defendant or anybody else to see if they could identify it as a similar instrument in this case?

A  No, I did not.

Q  So the only person telling you this is a similar instrument is Mr. Stallcup?

A  *According to the statements that I read that the defendant made to other officers, the instrument was described as a roofing knife or a cutter-type instrument that the blade came out on and, as one got dull, you broke it off, and a new part of the blade came out.*

Q  Is that a roofing knife?

A  This, *this is a cutting knife. I suppose you could use it for any purpose you wanted to.*

Q  Isn't there a special tool that called a roofing knife?

A  There is, but *I've never seen one like was described in that report.* And *I didn't find one at the hardware store like that. This is the nearest thing I could find as was described.*

(Emphasis added.) It was clear from the outset that the State was attempting to introduce an approximation of the lost crime weapon — the "nearest thing" available for illustrative purposes, based on Garrison's own imprecise custodial statement. The exhibit was demonstrative evidence, which, having no historical connection with the facts of the case, nevertheless served to illustrate or demonstrate the testimony of the witness. *See* Edward J. Imwinkelreid, *Evidentiary Foundations* 62 (2d ed. 1989).

The admissibility of demonstrative evidence is a matter falling within the wide discretion of the trial court. *Bowden* v. *State*, 297 Ark. 160, 761 S.W.2d 148 (1988). We will uphold the trial court's decision to admit physical evidence absent an abuse of discretion. *Ferrell* v. *State*, 305 Ark. 520, 810 S.W.2d

29 (1991). Here, as in *Ferrell*, where a .25-caliber pistol was introduced for demonstrative purposes in a case involving a .22-caliber gun, the testimony was clear that the knife was introduced as a means of demonstrating a point and not as the actual weapon used in the crime.

In *Wilburn* v. *State*, 292 Ark. 416, 731 S.W.2d 756 (1987), a Rule 37 post-conviction appeal, this court held that the petitioner had not shown that he was prejudiced by the display in court of a gun similar to the murder weapon, which had not been found. In *Fountain* v. *State*, 273 Ark. 457, 620 S.W.2d 936 (1981), we held that a roll of black electrical tape found at the accused rapist's residence was admissible because of its similarity to the tape used to bind the victim.

The court of appeals, in *Barker* v. *State*, 21 Ark. App. 56, 65, 728 S.W.2d 204, 209 (1987), ruled that a knife that might not have been the murder weapon was admissible because "[e]ven if this knife were not the fatal weapon, the similarity between it and the weapon used would make appellant's identity as the attacker more probable than it would be without the evidence." *See also Willis* v. *State*, 309 Ark. 328, 829 S.W.2d 417 (1992), where we held that there was no error in the introduction of a photograph of a sack similar to but larger than one containing drugs when the discrepancy in size and the actual quantity of drugs seized were explained to jury.

We are somewhat troubled by the lack of proof of similarity between the purchased knife and the one employed in the crime as well as by the fact that its introduction was deemed necessary or appropriate by the trial court. Nevertheless, there was no attempt on the part of the State in the present case to deceive the jury with regard to the provenance of the knife that was introduced into evidence. Rather, the jury was made aware of when, where, and by whom the knife was purchased. Lieutenant Stidman testified that he had never seen and was unable to purchase a knife like the one described by Garrison. The one he bought was the "nearest thing I could find." It was, therefore, relevant to illustrate how the victim received his particular injury.

In view of the State's straightforward explanation of the circumstances surrounding the acquisition of the knife and Garrison's failure to show prejudice, *Wilburn* v. *State, supra,* the

trial court did not abuse its discretion in admitting the purchased knife as demonstrative evidence.

■ On appeal, Garrison also argues that the State violated discovery rules by not disclosing before trial that it planned to offer a knife similar to the one used in the robbery. However, Garrison objected only after the knife had been admitted through Lieutenant Stidman's testimony. Failure to raise an objection at the first opportunity to do so waives any right to raise the point on appeal. *Johnson* v. *State, supra.* Further, Garrison never obtained a ruling on the objection and thus failed to sustain his burden of doing so. *Id.*

### III. Compliance with Rule 4-3(h)

Because Garrison was sentenced to life imprisonment, all errors prejudicial to him must be reviewed. Ark. Code Ann. § 16-91-113(a) (1987); Ark. R. Crim. P. 36.24; Ark. Sup. Ct. R. 4-3(h). The State has scrupulously reviewed the record and has abstracted those objections at trial which were decided adversely to Garrison but were not included in his abstract. No adverse rulings warranting reversal appear.

Affirmed.