Deatria Donyell HAMILTON *v.* STATE of Arkansas

CR 01-391 74 S.W.3d 615

Supreme Court of Arkansas
Opinion delivered May 9, 2002

*Katherine S. Streett*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Michael C. Angel*, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Deatria Donyell Hamilton appeals a judgment in which he was convicted of two counts of capital murder and sentenced to two terms of life imprisonment without parole. Hamilton argues five points on appeal, all of which involve alleged trial court error: (1) excusing for cause *venire* persons who opposed the death penalty under the facts of the case; (2) sustaining the State's objection and requiring defense counsel to read additional portions of a witness's statement during cross-examination by defense counsel; (3) admitting into evidence an inaccurate diagram of the crime scene thereby misleading the jury; (4) admitting into evidence a videotape of the crime scene, which contained inflammatory footage of the homicide victims; and (5) denying his motion for declaration of a mistrial after the State's witnesses made two references to his prior arrest and penitentiary sentence. We find no reversible error and affirm the judgment.

During the early morning hours of December 23, 1999, Carolyn and Starla Ellison discovered the bodies of James Ellison, their husband and father respectively, and Carlos Meeks, at Ellison's place of business, Leaders Barber Shop, in El Dorado. When the police officers arrived, they discovered that Mr. Meeks, who was still in the barber's chair and wearing a barber's apron, had suffered a bullet wound underneath his right eye and one to his right hand. Mr. Ellison's body was found lying on the floor behind the chair, and it was later determined that he too was shot in the head. Jewelry which Mr. Ellison wore was missing. Both men were dead. Police officers further discovered a bank bag on a table near the chair, which contained several one dollar bills, and

bloody footprints leading outside of the shop and southward toward the nearby railroad tracks.

At Hamilton's trial, Jerome Powell admitted to shooting both Mr. Ellison and Mr. Meeks and described the events of the evening in question. Powell had previously pled guilty to capital murder and had agreed to testify against Hamilton and Kirun Mendenhall in exchange for a sentence of life without parole. He testified that while at the home of friends named the Mendenhalls, he met Hamilton, and the two, with others, proceeded to drink gin and smoke marijuana that evening. At about midnight, Hamilton, Powell, and Kirun Mendenhall were at Leaders Barber Shop, where they decided to "get some money." Powell testified that Hamilton told him that Mr. Ellison made large amounts of money, which he kept in a bag, and that he also kept a gun. The three entered the store with robbery in mind. Hamilton spoke with Mr. Ellison and then nodded to Powell, which was the signal for Powell to pull his gun. Powell did so and turned around. He testified that the gun accidentally went off, shooting Mr. Meeks through his hand and face. Mr. Ellison then crouched downward, according to Powell, as if going for a gun, and Powell shot him and he fell to the floor. Mendenhall fled the shop, and Hamilton grabbed a briefcase and looked in Mr. Ellison's front pocket before leaving. All three men then met at the railroad tracks and began running toward the Mendenhall house. On the way, they stopped by an abandoned house, opened the briefcase, and removed a blue pouch which contained money. At some point, they split the money three ways, with each receiving approximately fifty dollars. Next, they burned the briefcase and continued to the Mendenhall house. After reaching the house, Powell and Hamilton discovered specks of blood on their clothing and decided to burn their clothes in the backyard. On December 28, 1999, Powell was arrested for the murders, and during a search of his home, Mr. Ellison's missing jewelry and a pistol were found in the wheel well of a vehicle on his property. Hamilton was subsequently arrested and gave a statement as had Powell.

A five day trial was held, and Hamilton was convicted and sentenced as already set out in this opinion.

## I. Voir Dire.

Hamilton first contends that the trial court erred in excluding *venire* persons who stated that they could not impose the death penalty for his participation when the actual shooter, Powell, was only to receive a sentence of life without parole. He maintains that the trial court expanded the scope of permissible death qualification for potential jurors, thus denying him due process of law.

■ The State responds that because Hamilton cannot demonstrate prejudice, his assertion is without merit. Specifically, the State contends that because Hamilton did not receive the death sentence, any argument he might now raise as to the death-qualified composition of his jury is moot. We agree. Hamilton received a sentence of life without parole—not death. Because he did not receive a death sentence, he lacks standing to raise errors having to do with the death penalty. *See, e.g., Weaver v. State*, 305 Ark. 180, 806 S.W.2d 615 (1991) (citing *Ward v. State*, 298 Ark. 448, 770 S.W.2d 109 (1989)). We affirm on this point.

## II. Out-of-Court Statement.

Hamilton next claims that the trial court erred in allowing the prosecutor to interrupt his counsel's questioning of State witness Jerome Powell, when his counsel was attempting to impeach Powell with a prior inconsistent statement. He submits that there is no requirement that "any part of the prior statement other than that which the attorney believes to be inconsistent" must be read for impeachment purposes. He further contends that had the prosecutor wished to correct an impression left by the impeachment, he could have taken the matter up on redirect examination. It was clear error, he concludes, for the trial court to require defense counsel to read additional portions of the prior statement into the record which had the effect of heightening the prosecutor's credibility in the jury's eyes.

■ ■ The State answers that Hamilton did not object to the State's request to have the prior inconsistent statement read in its entirety; thus, the issue is not preserved for our review. Indeed, the State underscores that defense counsel agreed to comply with

the prosecutor's request. The State is correct in that this issue is not preserved for appeal. The contemporaneous-objection rule requires a party's objection at the trial level in order to preserve an argument for appeal. *See Bader v. State*, 344 Ark. 241, 40 S.W.3d 738 (2001). The purpose of the contemporaneous-objection rule is to give the trial court a fair opportunity to consider an allegation of error and to correct it, if the allegation is meritorious. *See Robinson v. State*, 348 Ark. 280, 72 S.W.3d 827 (2002). Here, there was no ruling by the trial court because Hamilton's counsel failed to object to the prosecutor's requests. In fact, defense counsel acquiesced to each request by the prosecutor.

We are precluded from addressing this argument on appeal.

### III. Diagram.

Hamilton also claims that over his objection, the prosecutor was allowed to introduce a diagram which misrepresented the dimensions of the crime scene. He admits that the jury was cautioned by the trial court on this but asserts that it was only cautioned as to the diagram's failure to be drawn to scale and not as to the misleading placement of evidence and the positioning of the two bodies. Specifically, he takes issue with the positioning of one of the bodies in relationship to the walls of the shop and the bloody footprints. He argues that the interior of the barber shop was considerably smaller than that depicted by the diagram and that the close quarters lessened the likelihood that Hamilton could move about as described by Powell. Prejudice results, he claims, from the fact that the only direct evidence of what occurred inside the barber shop came from Jerome Powell, a witness with questionable credibility.

■ ■ This court has held that the admissibility of demonstrative evidence is a matter falling within the wide discretion of the trial court. *See Garrison v. State*, 319 Ark. 617, 893 S.W.2d 763 (1995). We have said: "[M]aps, drawings, and diagrams illustrating the scenes of a transaction and the relative location of objects, if shown to be reasonably accurate and correct, are admissible in evidence, in order to enable the court or jury to understand and apply the established facts to the particular case." *Howell*

*v. Baskins*, 213 Ark. 665, 671, 212 S.W.2d 353, 356 (1948) (quoting 20 AM. JUR. *Evidence* § 739). Where exactness was not claimed, nor was there any contention that distances indicated were sufficiently at variance with actuality, there is no creation of prejudice. *See Pinson v. State*, 210 Ark. 56, 194 S.W.2d 190 (1946).

■ In the case before us, Hamilton objected to the diagram of the interior of the barber shop, but it appears that he received the relief he desired as demonstrated by the following colloquy:

| | |
|---|---|
| THE COURT: | However, I'll overrule the objection to State's Exhibit 2. Do you want a cautionary instruction? |
| DEFENSE COUNSEL: | Yes. |
| THE COURT: | [What] would you like me to say? |
| DEFENSE COUNSEL: | To indicate to the jury that these drawings are not—that the drawing does not necessarily represent where the items are in relation to each other. |
| THE COURT: | I think that's a question of scale. |
| DEFENSE COUNSEL: | Your Honor, I don't think—that isn't the question of scale. Scale has to do with—it's reduced so that it's—you can determine. |
| THE COURT: | Obviously it is not to scale nor is it measure proportionate [sic]. |
| PROSECUTOR: | No objection to that. |
| THE COURT: | What? |
| PROSECUTOR: | No objection to that. |
| THE COURT: | Okay. |

(Back within hearing of the jury)

THE COURT: The two schematic diagrams that were prepared at this witness's direction [sic]. These drawings are not to scale, which means they are not proportionate. And so you need to understand that, as they talk about it that the distances, distances do not necessarily reflect the proportions within that barber shop. Okay?

Detective White testified that the diagram was not to scale, but that it would assist the jury in understanding "exactly the location where the various items were found[.]" Defense counsel, on cross-examination, thoroughly discussed the diagram and the crime scene itself with the witness. The diagram clearly was of assistance to the jury in understanding the testimony regarding the crime scene. *See, e.g., Bly v. State*, 267 Ark. 613, 593 S.W.2d 450 (1980). It also had neutral evidentiary value, as it "simply identified locations at the crime scene and imported no implication of guilt" on Hamilton's part. *See e.g., Jones v. State*, 318 Ark. 704, 889 S.W.2d 706 (1994). There was no abuse of discretion by the trial court in admitting the diagram into evidence.

## *IV. Videotape.*

For his next point, Hamilton argues that during the course of the trial, the prosecutor sought to admit a videotape of the crime scene made the day of the murders. He objected on the basis that the videotape's inflammatory nature was highly prejudicial and was not outweighed by its probative value, given the introduction of numerous crime scene photographs already admitted into evidence. He maintains that as the question for the jury was what role, if any, he played in the underlying felony and robbery, the videotape was not a necessary part of the State's case.

We addressed the standard for reviewing the admission of an allegedly gruesome videotape in *Jefferson v. State*, 328 Ark. 23, 941 S.W.2d 404 (1997), There, we said:

> A videotape is admissible if it is relevant, helpful to the jury, and not prejudicial. *Hickson v. State*, 312 Ark. 171, 847 S.W.2d 691 (1993). Generally, the same considerations and requirements for

admissibility that apply to photographs also apply to videotapes. *Williams v. State*, 316 Ark. 694, 874 S.W.2d 369 (1994). The admissibility of such evidence is in the sound discretion of the trial judge, whose discretion will not be set aside absent an abuse of that discretion. *Bradford v. State*, 306 Ark. 590, 815 S.W.2d 947 (1991).

*Jefferson*, 328 Ark. at 30, 941 S.W.2d at 408.

In the case before us, Hamilton urges that the still photographs were sufficient to apprise the jury of the crime scene and further that the videotape was cumulative and unnecessary and, thus, constituted prejudicial error. We have held, however, that videotapes can give the jury a different perspective of the crime scene. *See Hodge v. State*, 332 Ark. 377, 965 S.W.2d 766 (1998); *Jefferson v. State, supra; Camargo v. State*, 327 Ark. 631, 940 S.W.2d 464 (1997). In doing so, a videotape can be helpful to a jury's understanding of the case. *See Jefferson v. State, supra*.

Certainly, the crime scene was bloody and gruesome, but whether the prosecutor overstepped his bounds in the submission of cumulative depictions is a matter that lies within the trial court's discretion. *See Jefferson v. State, supra; Camargo v. State, supra*. We hold there was no abuse of discretion on this point.

## V. Prior Arrest and Sentence.

For his final point, Hamilton asserts that at two different places in the trial, mention was made of his prior arrest and incarceration. He specifically points to the testimony of Detective White, who responded during cross-examination by defense counsel that Hamilton's prints were retrieved from a file at the El Dorado police station, and the prosecutor's direct examination of Office Morgan, who testified that he had known Hamilton "a couple of years ago before he had went to the penitentiary." Hamilton underscores that at both junctures, he moved for a mistrial, and both times, it was denied. Appellant concludes that it was an abuse of discretion for the trial court to deny the motions.

This court has held that any reference to a defendant's prior convictions during the guilt phase of a bifurcated criminal trial always results in some prejudice. *See Stanley v. State*, 317 Ark. 32,

875 S.W.2d 493 (1994). However, in this regard the trial court is granted a wide latitude of discretion in granting or denying a motion for mistrial, and the decision of the trial court will not be reversed except for an abuse of that discretion or manifest prejudice to the complaining party. *See Bennett v. State*, 284 Ark. 87, 679 S.W.2d 202 (1984). This court generally adheres to the rule that a cautionary instruction or admonishment to the jury can make harmless any prejudice that might occur from an inadvertent reference to a prior conviction. *See Strawhacker v. State*, 304 Ark. 726, 804 S.W.2d 720 (1991). An important factor in the trial court's analysis and ours as well is whether the prosecutor deliberately induced a prejudicial response. *See id.*

Here, Detective White's reference to the fingerprints was not induced by the prosecutor, and the trial court offered to give a cautionary instruction on the matter. Accordingly, we agree with the State that it was not an abuse of discretion for the trial court to deny the motion for declaration of a mistrial. Moreover we likewise agree that the trial court did not abuse its discretion regarding Office Morgan's statement. Although some prejudice is typically present where mention of an appellant's prior incarceration has been made, this court has held that an admonition to the jury usually cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial. *See Kimble v. State*, 331 Ark. 155, 959 S.W.2d 43 (1998). That is precisely the situation in the case at hand. Following Office Morgan's statement and Hamilton's objection, the trial court decided to reserve judgment on the motion and gave the following cautionary instruction:

> Ladies and gentlemen, we are at a point, we're going to break for the day. But before we do that I'm going to instruct you that you are to disregard the last statement made by this witness. And you are not to consider it in any way.

The following day, when court reconvened, Hamilton argued that a mistrial was warranted due to the cumulative effect of the statements by Detective White and Office Morgan. The trial court disagreed and decided instead to poll and admonish each jury member individually, after defense counsel submitted

the following admonition upon request and without objection by the State:

THE COURT: Yesterday during the trial the last witness testified that Mr. Hamilton had served time in the penitentiary. Now that you've heard that testimony I have to ask you whether or not you can be certain that you will not consider that testimony in any way when determining the defendant's guilt or innocence. If you cannot be absolutely certain that you will not consider this testimony in any way it is important that you tell us at this time.

No juror responded that he or she would consider the tainted statements.

We affirm the trial court on this point.

### VI. Motion

 After this case was submitted to this court for decision, Hamilton filed a *pro se* motion to add a point to his direct appeal. We deny the motion. First, the motion comes too late for our consideration. Moreover, an appellant is entitled as a matter of right to representation by counsel on the direct appeal of a felony conviction. Hamilton is represented by counsel in this appeal. An appellant is not entitled, however, to accept appointment of counsel and also to submit a *pro se* brief. *See Franklin v. State,* 327 Ark. 537, 939 S.W.2d 836 (1997) (*per curiam*).

### VII. Rule 4-3(h) Review

The record has been reviewed pursuant to S.Ct. R. 4-3(h), and no reversible error has been found.

Affirmed. Motion denied.

IMBER, J. not participating.