Raymond KING *v.* STATE of Arkansas

CR 04-1023                                206 S.W.3d 883

Supreme Court of Arkansas
Opinion delivered April 14, 2005

*Susan D. Korsnes,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Misty Wilson Borkowski,* Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Raymond King appeals from both the circuit court's judgment of conviction for theft of property and his sentence to thirty years in prison as well as an order that denied King's petition for post-conviction relief. We affirm.

The pertinent facts are these. Raymond King was a fifty-three-year-old black male at the time of the offense who spent some nights with his family in Turrell and some nights in Memphis, Tennessee. He was employed to work on vehicles in Memphis. Mike Crosthwait and his wife live in Marion and owned a red 1991 GMC Jimmy. Their son Steven Crosthwait lived in West Memphis and used the vehicle.

On June 18, 2003, at 1:42 a.m., King was stopped by Sergeant Ronnie Noe, who was with the Southaven Police Department in Southaven, Mississippi. King was driving a red 1991 GMC Jimmy. Before he was stopped, Sergeant Noe "ran the tag on the car" and found that it was registered to an Arkansas resident. After following King for a period of time, Sergeant Noe activated his blue lights, pulled King over, and initiated a traffic stop in a parking lot in Southaven. Sergeant Noe next approached the vehicle and noticed that an identification card from Southland Greyhound Park that featured a photograph of a young, white male was hanging from the vehicle's rearview mirror. Sergeant Noe also noted that the vehicle's steering column was broken and that a screwdriver was lying at King's feet on the floorboard. He assumed that the screwdriver had been used to start the vehicle.

After asking King whether he owned the vehicle, King responded that he did not but that he was employed at a mechanic shop in Memphis, Tennessee, and was test-driving the car. After being advised of his *Miranda* rights, King told Sergeant Noe that he obtained the vehicle in West Memphis. Sergeant Noe then discovered that King's Arkansas driver's license was suspended or revoked, so he took King into custody in accordance with Southaven Police Department policy. Sergeant Noe contacted

Mike Crosthwait, who was shown as the owner of the vehicle and who said his son had physical custody of it.

At about 2:00 a.m. that same morning, Patrolman John Scola of the Marion Police Department was dispatched to the home of Mike Crosthwait. Mr. Crosthwait informed the police officer that he owned the vehicle but that his son Steven had it in West Memphis. After Officer Scola told Mike Crosthwait that his car had been "picked up" in Southaven, Mr. Crosthwait drove to Steven Crosthwait's apartment to see whether it indeed had been stolen. After discovering that the car was missing, Mike Crosthwait telephoned Officer Scola to confirm that the vehicle was stolen and then filed a report with the West Memphis Police Department. When the police officers in Southaven, Mississippi, were told that the GMC Jimmy had been stolen, King was arrested for illegally "taking" the vehicle. On July 23, 2003, King was transferred to Arkansas, where he was arrested and charged with theft of property. Later, he was charged as a habitual offender.

On April 21 and 22, 2004, King was tried by a jury in Crittenden County. The jury found King guilty of theft of property, which it valued at more than $500 but less than $2500, and sentenced him to thirty years in prison as a habitual offender. A judgment and conviction order was later entered.

On May 10, 2004, King's counsel filed a petition for post-conviction relief pursuant to Rule 37.1 of the Arkansas Rules of Criminal Procedure and asserted that the circuit court had lacked subject-matter jurisdiction to hear the matter, because no evidence was presented at trial that placed the GMC Jimmy in King's possession while in the State of Arkansas. On May 21, 2004, King filed a *pro se* petition for post-conviction relief in which he argued that his counsel was ineffective for failing to object and protect his rights at trial, for failing to communicate with him and inform him of any plea or case elements, and for failing to object to the State's proof that King was in Arkansas at the time the vehicle was stolen.

On June 7, 2004, the circuit court entered its order denying the May 10, 2004 petition for post-conviction relief, because evidence presented at trial showed that King acquired the vehicle in Arkansas, that it was stolen in Arkansas, and that jurisdiction was presumed because some elements of the charged offense occurred in Arkansas. On June 7, 2004, the circuit court entered its order denying the May 21, 2004 *pro se* petition for post-conviction relief,

because King's appointed counsel was still representing him at the court's direction, counsel had subpoenaed King's suggested witness, and counsel appropriately objected during trial and made proper motions for acquittal.

On June 23, 2004, King filed his notice of appeal from the judgment and conviction order and from the "Trial Court's denial of his Motion for Post-Conviction Relief."[1] On September 20, 2004, the record was tendered to the Clerk's office. On September 29, 2004, King's counsel filed a motion to file a belated appeal, which this court granted. *See King v. State*, 359 Ark. 274, 196 S.W.3d 486 (2004) (*per curiam*).

King first contends in his appeal that the circuit court abused its discretion in denying his motion for mistrial at trial, which was based on Sergeant Pierce's reference to King's "Offender ID." The State responds that this issue is procedurally barred. We agree.

A mistrial is an extreme and drastic remedy that will be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing with the trial or when the fundamental fairness of the trial has been manifestly affected. *See Moore v. State*, 355 Ark. 657, 144 S.W.3d 260 (2004). The circuit court has wide discretion in granting or denying a mistrial motion, and, absent an abuse of that discretion, the circuit court's decision will not be disturbed on appeal. *See id*. Among the factors this court considers on appeal in determining whether or not a circuit court abused its discretion in refusing to declare a mistrial are whether the prosecutor deliberately induced a prejudicial response and whether an admonition to the jury could have cured any resulting prejudice. *See id*.

The relevant colloquy at trial is as follows:

> [STATE]: My question, my concern, I'm getting ready to put the detective on out of Southaven.

> [COURT]: Pierce?

---

[1] King only includes his counsel's petition for post-conviction relief and the court's corresponding order in his Addendum. Moreover, he does not argue in his appellant's brief the points mounted in his *pro se* petition for post-conviction relief. Hence, we assume for this appeal that King is only appealing the order denying his May 10, 2004 petition and not the order denying his May 21, 2004 *pro se* petition.

[STATE]: Yes, Your Honor.

And he has a copy of the identification card that was taken from the Defendant on the night that's got his picture, also a date of birth but there's some stuff on that that —

[COURT]: Show it to Miss Korsnes [defense counsel].

[DEFENSE]: I've seen it, Your Honor, and I'm objecting to the introduction.

. . . .

[COURT]: Well, the document before The Court, for the record, says Offender ID, State of Tennessee Board of Probation and Parole. Field Service, Raymond King. It shows the date of birth as 2/8, 1950. DOC 9879, which I assume means Department of Corrections. Supervising Officer J. Brown.

There wouldn't be anything left of this document if you excised the objectionable material. In fact, on the back side it says Special Conditioner Probationer, Property Crime, Right-thumb Print.

The Court finds that the document itself that the probative value is outweighed by the prejudicial nature of it particularly since we're not gonna talk about priors or the fact that he's a convicted felon until and unless we get to penalty phase in this case.

[STATE]: Judge, I will be able to ask him about did it have his photograph and did it have a date of birth on it, I assume?

[COURT]: Absolutely.

. . . .

[COURT]: So, Miss Korsnes' [defense counsel] objection to the document is sustained.

After a short recess, trial resumed with the State's witness, Sergeant Todd Pierce of the Southaven Police Department. After giving his law enforcement history, Sergeant Pierce testified that he was paged between 2:15 and 2:30 on the morning of June 18 to come to the police department where King was being held for auto theft. The following is an except from Sergeant Pierce's direct testimony:

[PIERCE]: I went to the police department.

[STATE]: And did you come in contact with a[n] individual that they had in custody by the name of Raymond King?

[PIERCE]: Yes, sir, I did.

[STATE]: Is that person in the courtroom?

[PIERCE]: Yes, sir, he's sitting right over there with the blue shirt.

[STATE]: And at the time that you, were you the detective that was assigned to this investigation?

[PIERCE]: Yes, sir, I was.

[STATE]: Okay.

Did you come in contact with any form of identification that was taken from the Defendant King at the time?

[PIERCE]: Yes, sir, an offender ID from the State of Tennessee.

[DEFENSE]: Huh-uh, objection, Your Honor.

[COURT]: Sustained.

[STATE]: Did you, yes or no?

[PIERCE]: Yes.

The State continued with its direct examination for several more minutes, and, once concluded, King's counsel asked to approach the bench.[2] The following conversation took place outside the hearing of the jury:

> [DEFENSE]: I was not able to ascertain because I was screaming so loud exactly how far he got with the identification and ID tag.

> [COURT]: Well, the, the statement made, the unsolicited response of the witness to the question about did he show you any ID was the witness saying he showed me an, and almost simultaneous with the statement The Court heard he used the term Offender ID. You objected very very promptly and timely. The Court, The Court quite frankly did not, I assume that's what he said because I had seen the document. It could just as easily gone down as Defendant ID. But it was sort of muffled. That's as far as it went.

> [DEFENSE]: Your Honor, at this time O—

> [COURT]: You objected and, uh, and there was no further question asked about it.

> [DEFENSE]: I would make a motion at this time for a mistrial due to the prejudicial nature of the fact that it was stated to be an Offender ID.

> [COURT]: Mr. Thorne [prosecutor].

> [STATE]: Judge, I think a mistrial is a most serious drastic remedy. I believe that it was Miss Korsnes [defense counsel] hollering and I believe also at the time I told him to stop also but I think he did say offender to be quite honest with you.

> [COURT]: I know. That's what, I'm assuming that's what he said.

---

[2] Additional direct examination of Sergeant Pierce by the prosecutor continues for three more pages in the record.

[STATE]: But I, I think that's a drastic remedy and, Judge, I don't believe the jury actually heard that but I don't know if technically they know what offender means any way. But I don't know how else to answer that but I believe —

[DEFENSE]: Your Honor, the only way to ascertain that would be to poll the jury which will —

[COURT]: Which would further aggravate the problem. I'm not inclined to make (inaudible) because at this point in time I don't believe any real prejudice has occurred. I will, if you want me to give them any sort of admonition to disregard I'll be happy to do so but that's your call.

[DEFENSE]: I think —

[COURT]: I think it further probably aggravates the situation and let's just go with it as it is.   Your objection is made and noted for the record and overruled.

[DEFENSE]: Thank you, Your Honor.

After the bench conversation, King's counsel began her cross-examination of Sergeant Pierce.

In *Ferguson v. State*, 343 Ark. 159, 33 S.W.3d 115 (2000), this court observed that the appellant's mistrial motion made after the prosecutor completed redirect examination of the witness was not a contemporaneous objection to testimony. In *Ferguson*, a witness for the State stated twice during cross-examination that appellant took a polygraph test. Rather than immediately objecting and moving for a mistrial, defense counsel continued to cross-examine the witness. It was not until the State had completed redirect examination of its witness that defense counsel objected to the polygraph testimony and moved for a mistrial. The appellant was convicted of first-degree murder. On appeal, this court stated that motions for mistrial must be made at first opportunity to give the circuit court an opportunity to correct any error early in the trial and to minimize or eliminate any potential for prejudice. Despite the procedural bar, this court went on to find that appellant failed to show that the circuit court abused its discretion in denying the mistrial motion, because the witness's remarks were spontaneous and had not been solicited by the prosecutor.

■ We hold that the circuit court, in the instant case, did not abuse its discretion in denying King's mistrial motion, because it was untimely made and, thus, was procedurally barred. As in *Ferguson v. State, supra*, King's counsel did not contemporaneously object and move for a mistrial when Sergeant Pierce first mentioned King's Offender ID. In *Ferguson*, the offensive statement was made during cross-examination but was not objected to until after redirect examination. In the case at bar, the offensive statement was made during direct examination to which King's counsel immediately objected. However, the motion for a mistrial was not made until after the prosecutor had completed his examination of Sergeant Pierce several minutes later. Clearly, the mistrial motion was not made at first opportunity. Moreover, as was the case in *Ferguson*, the circuit court did not abuse its discretion in finding that Sergeant Pierce's answer was inadvertent. We further note that King's counsel never requested that the circuit court administer a cautionary instruction or admonish the jury. *See Moore v. State, supra; Hamilton v. State*, 348 Ark. 532, 74 S.W.3d 615 (2002).

For his next point, King contends that the circuit court erroneously denied his motion for post-conviction relief, because none of the elements of vehicular theft were proven to have occurred in Arkansas. Hence, King claims that the Arkansas circuit court lacked subject-matter jurisdiction to hear his case.

The State responds that the circuit court correctly denied King's petition for post-conviction relief, because subject-matter jurisdiction is tested on the pleadings and not on the proof and because substantial circumstantial evidence was presented that King stole the vehicle from the parking lot in West Memphis and drove it to Southaven, Mississippi. Accordingly, the circuit court in Arkansas had jurisdiction to hear the case. The State adds that King failed to offer any evidence at trial showing that the circuit court lacked jurisdiction.

The Arkansas Criminal Code provides that jurisdiction is one of four elements that must be proven beyond a reasonable doubt to convict someone of an offense. *See* Ark. Code Ann. § 5-1-111(a) (Repl. 1997). However, the State is not required to prove jurisdiction unless evidence is admitted that affirmatively shows that the court lacks jurisdiction. *See* Ark. Code Ann. § 5-1-111(b) (Repl. 1997). *See also Findley v. State*, 307 Ark. 53, 818 S.W.2d 242 (1991) (Arkansas had jurisdiction of a capital felony murder case where underlying robbery was initiated in

Arkansas though it culminated in Tennessee; essential part of the crime occurred in Arkansas); *Gardner v. State*, 263 Ark. 739, 569 S.W.2d 74 (1978) (Arkansas had jurisdiction of a rape case where one of the rapes occurred in Arkansas, though other rapes occurred in Oklahoma; essential part of crime occurred in Arkansas).

Under the Arkansas Criminal Code, a person commits theft of property if he "[k]nowingly takes or exercises unauthorized control over, . . . the property of another person, with the purpose of depriving the owner thereof[.]" Ark. Code Ann. § 5-36-103(a)(1) (Repl. 1997). To "deprive" an owner of an interest in his property, one must:

> (A) . . . withhold property or . . . cause it to be withheld either permanently or under circumstances such that a major portion of its economic value, use, or benefit is appropriated to the actor or lost to the owner; or

> (B) . . . withhold property or . . . cause it to be withheld with the purpose to restore it only upon the payment of a reward or other compensation; or

> (C) . . . dispose of property or use it or transfer any interest in it under circumstances that make its restoration unlikely[.]

Ark. Code Ann. § 5-36-101(4) (Supp. 2003).

In the case before us, circumstantial evidence was introduced at King's trial to show that he knowingly took control of the Crosthwait GMC Jimmy in Arkansas. At trial, it was revealed that King told Sergeant Noe that he obtained the vehicle in West Memphis. Evidence was also presented that the vehicle was owned by Mike Crosthwait and was being used by Steven Crosthwait in West Memphis. This evidence is substantial in our judgment and shows that King knowingly took control of Crosthwait's property without authorization in Arkansas. Accordingly, an essential element of the crime took place in Arkansas. *See Findley v. State, supra; Gardner v. State, supra.* Because substantial evidence was introduced on the jurisdictional point to prove the Arkansas connection, albeit circumstantial evidence, the circuit court did not abuse its discretion in denying King's petition for post-conviction relief.

Affirmed.