2013 Ark. 116

Daniel **PEDRAZA**, Petitioner

v.

**CIRCUIT COURT OF DREW COUNTY**, Respondent.

No. CR 12–851.

Supreme Court of Arkansas.

March 14, 2013.

---

Jeff Rosenzweig, Little Rock; George (Birc) Morledge, Little Rock; and Timothy Leonard, for appellant.

Dustin McDaniel, Att'y Gen., by: Eileen W. Harrison, Ass't Att'y Gen., for appellee.

CLIFF HOOFMAN, Justice.

Petitioner Daniel Pedraza is charged with capital murder, and the State is seeking the death penalty. Pedraza has filed a petition for writ of certiorari asking this court to order the Drew County Circuit Court to grant a continuance of his trial. Because Pedraza requests extraordinary relief, our jurisdiction is pursuant to Arkansas Supreme Court Rule 12(a)(3). We deny the petition.

On March 2, 2012, Pedraza, without counsel, made his first appearance in the Drew County Circuit Court and was held without bond pending charges of capital murder. He was charged with capital murder as provided in Arkansas Code Annotated section 5–10–101 (Supp.2011) and permitting the abuse of a minor as provided in Arkansas Code Annotated section 5–27–221 (Repl.2006) by felony information on March 20, 2012. Pedraza appeared in circuit court for formal arraignment on April 2, 2012. Steve Porch, a local public defender, was ₂appointed by the court to represent Pedraza. At that hearing, he entered a plea of not guilty and requested a jury trial. The court gave Porch until April 13 to identify death-qualified co-counsel, and it scheduled an omnibus hearing for May 7.[1] The court informed the parties that it would "endeavor to try this at the end of the summer."

On April 9, 2012, Jeff Rosenzweig, appointed by the Arkansas Public Defender Commission, entered his appearance as lead counsel for Pedraza. Thereafter, Porch inquired of the court as to whether both he and Rosenzweig needed to be at all pretrial hearings. The court, by letter, informed the parties that both death-qualified defense attorneys were required to be present at all stages of the proceedings. On April 20, 2012, Porch filed a motion to substitute Patrick Benca as counsel, and Benca filed an entry of appearance.

At the May 7 hearing, Rosenzweig and Benca appeared on behalf of Pedraza and asked the court to continue the omnibus hearing for thirty days. The court granted that request and set the next court date for June 11. At the June 11, 2012 hearing, the defense informed the court that it had received the autopsy report and a sizeable amount of discovery from the State within the last week. Although the defense did not anticipate arguing that Pedraza was incompetent to proceed with trial or that he had a mental disease or defect that would impact the issue of culpability, it asked for two months to allow an expert to examine Pedraza for mitigation purposes. The court declined this request and ordered the defense to identify experts, including those for purposes of mitigation, and the substance of their testimony ₃within thirty days. Additionally, the court set a trial date of October 15, 2012, with the expectation that the trial would take two weeks. Rosenzweig indicated that he had another trial tentatively scheduled for the first two weeks of October, to which the court responded that its setting was first over a tentative scheduling and "would prevail." Thereafter, Benca stated that he had a two-week death-penalty trial scheduled to begin October 8 in Benton County. The court noted that it "would love to have [Benca] in this courtroom, but they'll have to find someone else." Rosenzweig objected on the basis that Benca had indicated he had a conflict and that it would be inappropriate to substitute another attorney at the last minute. The court noted that it would wait to see if an actual conflict occurred and that it would possibly contact the circuit judge in Benton County to discuss scheduling matters.

The court entered a written order on June 13, 2012, setting the case for jury trial on October 15, 2012, and setting a pretrial hearing for July 10. The order noted that if the trial date was inconvenient to witnesses or counsel, the court was to be promptly notified and the case would be reset for October 22, 2012. Benca sent a letter to the court stating that his October 8 trial was likely to proceed and requesting that the court consider the alter-

---

1. Tim Leonard, a non-death-qualified attorney, requested to sit as a third counsel on the case. He formally filed his entry of appearance on May 1, 2012.

nate October 22 date. On June 21, 2012, the court entered an amended order setting the trial for October 22, 2012, to accommodate Benca's conflict. Benca sent another letter to the court on June 26, 2012, asking the court to consider continuing the trial until the first part of 2013. Benca informed the court that he would like to stay on the case but that due to his other scheduled trial in October 2012, he could not effectively represent Pedraza if a continuance was not granted. A letter from the court, filed of record on July 2, 2012, stated,

This Court, based upon this record, has no reason to believe that Mr. Pedraza's defense would be prejudiced by trying his case as scheduled. Normally cases do not get better with age.

On July 6, 2012, Pedraza filed a notice of objection to trial setting and motion for continuance, arguing that Benca never consulted with lead counsel prior to accepting the October 22 date; that Benca's two-week trial in Benton County, scheduled immediately prior to the October 22 setting, would severely limit his participation in advance of Pedraza's trial; and that due to the complexity of the case and the fact that discovery was not yet completed, it would be nearly impossible to go to trial in October. On that same date, George "Birc" Morledge filed a motion to be substituted as counsel to relieve Benca. Because Morledge would not admit that the substitution would not cause a delay in the October 22 trial setting, the court refused to relieve Benca and substitute Morledge. On July 20, 2012, Pedraza filed a renewal of his motion to substitute counsel, clarifying that Morledge would have no actual conflict with the October 22 trial setting but that the defense as a whole would not have enough time to adequately prepare.

On September 10, 2012, Pedraza was again before the court at a pretrial hearing. The court granted the motion to substitute Morledge for Benca. Defense counsel again requested a continuance, citing trouble obtaining all of Pedraza's military records. Defense counsel asserted that Pedraza had spent a year in combat in Iraq with the National Guard and that those records were necessary for mitigation purposes. After hearing argument of counsel, the court ordered Pedraza's mitigation investigator, Tyler Green, to take the stand and testify about what steps he had taken to acquire the military records. Rosenzweig asked that Green's testimony be taken ex parte, as Green is a member of the defense team, but the court denied that request. Green testified that he had acquired some of Pedraza's military records from the Crossett National Guard Armory but that he had been unsuccessful in obtaining Pedraza's military medical records. The court denied the motion for a continuance without prejudice.

On September 27, 2012, Pedraza filed a renewal of his motion for continuance under seal. He argued that the October 22 trial date was six months from his first court appearance wherein he was represented by counsel; that at least a year was necessary to prepare for trial due to the complexity of the case; that his case in particular posed specific issues necessitating a continuance, because of his status as a Mexican national, the cultural and language barriers involved, and the fact that the majority of his family, including his mother and father, did not speak English and lived in Mexico; that the defense had been hampered by personnel issues regarding who would serve as counsel; that investigation into Post Traumatic Stress Disorder (PTSD) as a possible mitigator was hampered without access to Pedraza's military medical records; and that the Arkansas State Crime Lab had still not provided all relevant discovery to the defense.

Pedraza maintained that despite diligent efforts, his defense counsel needed additional time to prepare, that significant work remained to be completed, and that under no circumstances could the defense be prepared to effectively represent Pedraza for a trial on October 22. He asked that he be given more time to develop mitigation through evaluation by mental-health experts. Moreover, Pedraza asserted that once his defense team had identified witnesses for mitigation purposes, including family members who lived in Mexico, it would take at least four months to secure the proper documentation and approval to have those family members travel to Arkansas to testify. Attached to the motion were several affidavits and declarations in support of granting a continuance, including a letter from the |₆Consul General of Mexico; a declaration from a Texas criminal-defense attorney who tried death-penalty cases; an affidavit of Dr. James Walker, a clinical neuropsychologist and forensic psychologist, who stated that he had begun an evaluation of Pedraza but that his work was not yet finished and would take additional time; a declaration of another physician;[2] and an affidavit of Alicia Amezcua–Rodriguez, a mitigation investigator with experience in capital cases involving Mexican nationals. Pedraza asked the court to grant a reasonable continuance for his defense team to complete its investigation and to prepare for trial.

The court entered an order on September 27, 2012, finding that there was no sound legal reason not to allow the State to review and respond to the motion for continuance that had been filed under seal. However, the court withheld one declaration "for the time being" but noted that nothing in it revealed information not already known to all counsel. The court found that nothing presented by Pedraza supported a "threshold finding that a continuance would furnish a reasonable possibility that mitigators would be uncovered." Specifically, the court found that the defense had "furnished no facts establishing [Pedraza] has spent any significant part of his life in Mexico" such that an investigation there would be necessary.

Another hearing was held on the renewed motion for continuance on October 1, 2012. The court informed the defense that it would need to supplement its previous motion with facts in the record to establish that the continuance was being sought to pursue the reasonable possibility of helpful discovery, such as mitigation. Specifically, the court asked for evidence as to whether PTSD was a viable mitigation pursuit. The court focused on whether Pedraza could prove that he was in the military, that he had served in Iraq, and that he had |₇not withheld authorization for the release of military information to impede his own defense. The defense presented evidence of Pedraza's military service and asked to be able to present additional evidence ex parte so as not to violate attorney-client privilege. The court denied the motion to hear additional evidence ex parte, found that Pedraza had failed to make the requisite factual showing, and concluded the hearing.

Thereafter, Pedraza filed a notice of appeal and intention to seek a writ of certiorari. He filed the instant petition on October 5, 2012. We took the petition as a case, ordered briefing on the petition, and stayed the trial so that we could consider Pedraza's arguments.

In support of his petition, Pedraza acknowledges that the relief he requests, for this court to order a circuit court to grant a continuance, is unprecedented. Howev-

2. This declaration was left sealed by the circuit court.

er, Pedraza maintains that because of the special circumstances of this case—a complex death-penalty case slated for trial merely six months after the defendant was afforded the benefit of counsel—this court should grant relief. He contends that the circuit court clearly abused its discretion in denying a continuance under the circumstances and that the remedy of appeal would be inadequate. Pedraza asserts that a failure to provide sufficient time to prepare for trial in a death case implicates the rights of due process under the Fourteenth Amendment, effective assistance of counsel under the Sixth Amendment, and his rights pursuant to the Eighth Amendment. Pedraza maintains that the circuit court's denial of a continuance is more egregious in this particular case, due to cultural and language barriers and the difficulty acquiring Pedraza's military records. Ultimately, Pedraza asks this court to grant his petition and provide guidelines for the circuit court in using its discretion.

There are two requirements that must be satisfied in order for this court to grant a writ of certiorari. *Ark. Pub. Defender Comm'n v. Pulaski Cnty. Circuit Court*, 2010 Ark. 224, 365 S.W.3d 193. The first requirement for a writ of certiorari is that there can be no other adequate remedy but for the writ of certiorari. *Id.* Second, a writ of certiorari lies only where (1) it is apparent on the face of the record that there has been a plain, manifest, clear, and gross abuse of discretion, or (2) there is a lack of jurisdiction, an act in excess of jurisdiction on the face of the record, or the proceedings are erroneous on the face of the record. *Id.* Certiorari is not to be used "to look beyond the face of the record to ascertain the actual merits of a controversy, to control discretion, to review a finding upon facts or review the exercise of a court's discretionary authority." *Allen v. Circuit Court*

*of Pulaski Cnty.*, 2009 Ark. 167, at 11, 303 S.W.3d 70, 76. This court has held that the writ of certiorari may not be used as a substitute for an appeal and that this court cannot review cases in a piecemeal fashion. *Conner v. Simes*, 355 Ark. 422, 429, 139 S.W.3d 476, 480 (2003).

Here, Pedraza is asking this court to issue the writ ordering the circuit court to allow the defense more time to prepare for trial. Under our rules of criminal procedure, a circuit court shall grant a continuance only upon a showing of good cause and only for as long as is necessary, taking into account not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in prompt disposition of the case. Ark. R.Crim. P. 27.3 (2011). Ordinarily, when we review the denial of a continuance on appeal, we apply an abuse-of-discretion standard and require a showing of prejudice by the defendant. *Green v. State*, 2012 Ark. 19, 386 S.W.3d 413. Moreover, when a motion to continue is based on a lack of time to prepare, we consider the totality of the circumstances. *Id.*

We conclude that Pedraza is not entitled to a writ of certiorari in this instance because he clearly has another adequate remedy at law, an appeal. This court has addressed the denial of a continuance on appeal in capital cases on many occasions, including those where a sentence of death has been imposed. *See Thomas v. State*, 370 Ark. 70, 257 S.W.3d 92 (2007); *Barnes v. State*, 346 Ark. 91, 55 S.W.3d 271 (2001); *Lee v. State*, 326 Ark. 529, 932 S.W.2d 756 (1996); *Sanders v. State*, 317 Ark. 328, 878 S.W.2d 391 (1994); *see also Westbrook v. State*, 265 Ark. 736, 580 S.W.2d 702 (1979) (holding that the trial court abused its discretion in not granting a continuance so that the defendant could acquire records and testimony regarding his mental state). Moreover,

certiorari is not a vehicle to review matters that are within the trial court's discretionary authority. *Chiodini v. Lock,* 373 Ark. 88, 281 S.W.3d 728 (2008). Because a trial court's decision whether to grant a motion for continuance is a matter well within the court's jurisdiction and discretion, a writ of certiorari cannot lie to correct any perceived error in the court's ruling.

Nevertheless, Pedraza maintains that the remedy of appeal is not adequate because if he is forced to trial before his defense is properly prepared, he will suffer irreparable harm. Specifically, he asserts that both direct testimony by defense witnesses and cross-examination of State witnesses during the first trial, which may be flawed by lack of information or a full understanding of the case, could be admissible in any retrial under Arkansas Rule of Evidence 801(d)(1) (2012). However, the concern posited by Pedraza applies to every criminal case reversed on appeal and remanded for retrial. Here, had Pedraza been forced to trial on October 22, 2012, been convicted, and then appealed the denial of his motion for continuance, this court would have addressed whether the circuit court abused its discretion in denying the continuance. Because Pedraza cannot demonstrate that he is without an adequate remedy in this case, we must deny his petition for writ of certiorari.

■ Notwithstanding, this court has repeatedly acknowledged that "death is different." *See Wertz v. State,* 373 Ark. 260, 283 S.W.3d 549 (2008) (per curiam); *Robbins v. State,* 353 Ark. 556, 114 S.W.3d 217 (2003); *Am. Civil Liberties Union of Ark., Inc. v. State,* 339 Ark. 314, 5 S.W.3d 418 (1999); *Echols v. State,* 344 Ark. 513, 42 S.W.3d 467 (2001); *Franz v. State,* 296 Ark. 181, 754 S.W.2d 839 (1988), *overruled on other grounds by State v. Robbins,* 339 Ark. 379, 5 S.W.3d 51 (1999). Consequently, defense counsel have an obligation to conduct a thorough investigation into issues relating to both guilt and penalty, including investigation "to discover all reasonably available mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor." *Wiggins v. Smith,* 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (citing with approval the ABA Guidelines for the Appointment and Performance of the Counsel in Death Penalty Cases); *see also Rompilla v. Beard,* 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005). Thus, in light of the unique demands of cases involving the death penalty, we ask the Supreme Court Committee on Criminal Practice to consider whether changes should be made to Arkansas Rule of Criminal Procedure 27.3.

Writ of certiorari denied.

HART, J., concurs.

JOSEPHINE LINKER HART, Justice, concurring.

I reaffirm the majority's acknowledgment that "death is different" and echo the court's call for rule changes to reflect defense counsel's need for adequate time to prepare a defense, discover mitigating evidence, and rebut aggravating evidence. In recognition of this difference, court rules require that defense counsel meet certain educational requirements in death-penalty postconviction proceedings, Ark. R.Crim. P. 37.5(c)(1)(D), and the Arkansas Public Defender Commission has promulgated rules requiring that defense counsel in death-penalty cases annually complete continuing legal education concerning defense of capital cases, 060–00–002 Ark. Code R. § (A)(6) & (B)(2)(d) (Weil 2000). Circuit courts, prosecutors, and State appellate counsel should meet similar educational requirements so that they, too, will recognize the specific demands of death-penalty cases, such as understanding

that defense counsel needs sufficient time to prepare, as required by due process under the Fourteenth Amendment and the safeguard of effective assistance of counsel under the Sixth Amendment.