

Cite as 2014 Ark. 298

# SUPREME COURT OF ARKANSAS

No. CR–13–991

| | | |
|---|---|---|
| DANIEL PEDRAZA | | **Opinion Delivered** June 26, 2014 |
| | APPELLANT | APPEAL FROM THE DREW COUNTY CIRCUIT COURT, [NO. CR–2012-37] |
| V. | | |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE ROBERT BYNUM GIBSON, JR., JUDGE |
| | | AFFIRMED. |

## DONALD L. CORBIN, Associate Justice

Appellant, Daniel Pedraza, appeals the order of the Drew County Circuit Court imposing a sentence of life imprisonment rendered in a jury-sentencing proceeding that followed his guilty plea to murder in the first degree, a violation of Arkansas Code Annotated section 5–10–102 (Repl. 2013). As his sole point for reversal, Appellant contends that the circuit court erred in refusing to permit additional voir dire of the selected but unsworn jury after the plea agreement had been consummated. If this court reverses, Appellant further requests the disqualification of the circuit court judge for bias and the appearance of bias toward Appellant's counsel. Because this case involves a sentence of life imprisonment and because it is a subsequent appeal, *Pedraza v. Circuit Court of Drew County*, 2013 Ark. 116, 426 S.W.3d 441, jurisdiction is properly in this court pursuant to Arkansas Supreme Court Rule 1–2(a)(2) and (a)(7) (2013). We affirm.

Appellant was charged by amended information with the February 2012 capital murder of his two-year-old stepdaughter, Aubriana Coke. The State filed notice of the aggravating circumstances it would rely on in seeking the death penalty; namely, that the murder was committed against a person less than twelve years of age and in an especially cruel and depraved manner that brought Appellant pleasure.

Appellant was appointed death-qualified counsel who, at a June 11, 2012 pretrial hearing, requested a two-month continuance to allow an expert to examine Appellant for the purpose of obtaining mitigating evidence. *Pedraza*, 2013 Ark. 116, 426 S.W.3d 441. At a subsequent pretrial hearing on September 10, 2012, and again by written motion filed September 27, 2012, Appellant's counsel renewed the request for a continuance, citing trouble obtaining information to be used for mitigation purposes, such as (1) the military records of Appellant's year of service in combat in Iraq as a member of the Arkansas National Guard, (2) the military medical records concerning Appellant's possible Post Traumatic Stress Disorder, and (3) the potential testimony from family members who lived in Mexico. The circuit court denied the continuance, and this court denied Appellant's subsequent petition for a writ of certiorari because an appeal was an adequate remedy for Appellant. In so doing, this court nevertheless acknowledged that defense counsel had an obligation to conduct a thorough investigation "to discover all reasonably available mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor." *Pedraza*, 2013 Ark. 116, at 10, 426 S.W.3d 441, 447 (quoting *Wiggins v. Smith*, 539 U.S. 510, 524 (2003)).

Jury selection for Appellant's trial began on Thursday, May 30, 2013. The circuit court placed strict time constraints and other restrictions on voir dire, and a jury was selected for this then capital-murder case in one day. On Friday morning, May 31, 2013, although the circuit court had excused the venire, the circuit court did not swear the jury because counsel for both sides had informed the court that they were in the process of plea negotiations. The circuit court, accordingly, granted a recess until Monday and instructed the selected but unsworn jury to return at that time.

Over the weekend both sides did, in fact, reach a plea agreement. The State agreed to waive the death penalty and reduce the charge to first-degree murder, while Appellant agreed to plead guilty to first-degree murder and be sentenced by the jury. Appellant appeared in court on Saturday, June 1, 2013, and the circuit court accepted his guilty plea.

On Monday, June 3, 2013, the State filed a second amended information charging Appellant with first-degree murder. As part of the plea bargain, Appellant agreed to waive any and all errors that had occurred up to that time. Thus, also on June 3, 2013, Appellant filed a written statement of waiver stating that

> having elected to accept the State's offer to plead guilty to the charge of first degree murder following jury selection on May 31, 2013, for a trial on the charge of capital murder, [he] hereby waives and relinquishes appellate review as to all objections, motions, and other issues decided adversely to him prior to his guilty plea, reserving, however, the right of appeal as to any error which may occur in his jury sentencing for the offense of first degree murder.

When the selected, but not yet sworn, jury appeared on Monday morning, Appellant sought to ask or to have the circuit court ask the jurors, additional questions concerning the

3

change in circumstances that had occurred over the weekend. The circuit court denied the request, and the sentencing trial began. After the jury had heard evidence and argument over two days, the jury sentenced Appellant to life imprisonment. This appeal followed.

For reversal of his sentence of life imprisonment, Appellant contends that the circuit court committed constitutional error and abused its discretion in denying his request to conduct additional voir dire of the selected but unsworn jury after Appellant had pleaded guilty to a lesser charge. Appellant sought to determine whether the plea developments had rendered any selected but unsworn jurors to no longer be qualified, and he proffered to the court a brief statement and three specific questions concerning the reduction in the charge and the differing ranges of punishment. Appellant contends that these proffered questions would have elicited from the jurors whether any of them would be biased against him because he had pleaded guilty to the lesser offense of first-degree murder. Appellant asserts that the circuit court's denial of this additional voir dire of the unsworn jurors violated his fundamental rights to a fair and impartial jury and to due process of law under the Sixth and Fourteenth Amendments to the United States Constitution, as well as sections 10 and 8 of article 2 of the Arkansas Constitution. In addition, Appellant alleges that a violation of Rule 32.2 of the Arkansas Rules of Criminal Procedure occurred.

The State first responds that the issue raised here by Appellant is not appealable because the acceptance of the selected jury was a condition of the plea agreement. "We indeed do not allow appeals from guilty pleas when the appeal alleges an error having to do with an integral part of the plea and its acceptance by a trial court." *Hodge v. State*, 320 Ark. 31, 33,

894 S.W.2d 927, 929 (1995). However, the record here simply does not support the State's contention that "the issue of reopening voir dire was inextricably linked to the plea agreement because the parties had stipulated that the jury, which had already been impaneled, was qualified to pronounce sentence." The written statement of waiver that Appellant filed does not include any such stipulation by the parties, and there is no mention of such stipulation in the colloquy between counsel and the circuit court. While the circuit court did state that it wanted an agreement that the same jury would be used, the record simply does not bear out the State's contention that the parties stipulated to the qualifications of the selected but unsworn jurors to pronounce sentence on the reduced charge of first-degree murder. Moreover, the circuit court accepted Appellant's plea in open court without such express stipulation or any discussion of the matter and without objection from the State. Therefore, contrary to the State's assertion otherwise, we conclude that the preclusion of further voir dire was not an integral part of the plea agreement. Accordingly, because Appellant's assignment of error involves nonjurisdictional issues that occurred subsequent to his guilty plea, we address the merits of his argument on appeal. *See Hill v. State*, 318 Ark. 408, 887 S.W.2d 275 (1994).

Appellant proffered the following statement and additional voir dire questions to be read to the jury by the circuit court:

### PEDRAZA ADDITIONAL VOIR DIRE QUESTIONS

In jury selection last week, you were told that Mr. Pedraza was charged with capital murder, which is the causing the death of a person under age 14 knowingly and in circumstances manifesting extreme indifference to the value of human life. With the

5

approval of the prosecuting attorney, he has entered a plea of guilty to murder in the first degree, which is causing the death of a person under age 14 knowingly but does not involve circumstances manifesting extreme indifference to the value of human life.

As you found out last week, capital murder carries possible punishments of life imprisonment without parole or the death penalty. Murder in the first degree carries a possible punishment of between 10 and 40 years or life imprisonment.

With that in mind, I have these questions:

1. Do you understand the difference between capital murder and murder in the first degree?

2. Will you be able to now consider that Mr. Pedraza stands convicted of murder in the first degree and set aside what you were told about the elements of capital murder?

3. Can you consider the full range of punishment for conviction of murder in the first degree and set aside what you were told about the range of punishment for capital murder?

In support of the proffer, Appellant's counsel argued as follows:

MR. ROSENZWEIG: Your Honor, the point I am making is we had jurors who said they could consider the full range of punishment of life without parole or death. We need to ensure, specifically, that there are no jurors who cannot consider the full range for first degree. In other words, do we have jurors who are of the opinion that one has to do at least 25, or 40, or some other for homicide involving a child? And, now, what we have – before the jury is sworn – we have a material change of facts on the ground. This is not a situation, unlike the directed verdict, where the jury's already been – Where the jury's already been sworn. We have an as-yet unsworn panel and we need to know their attitudes. And there are fourteen people, so, you know, if you lose two, you've still got a panel. But I think it's essential to Mr. Pedraza's federal and state constitutional rights to due process and fair trial, and appropriate fair jury, that we ensure that there is no one on that panel who simply cannot consider the full range of punishment.

THE COURT: Very well. The Court has considered your arguments. I've denied. I find no precedent for it. And the jury is – The jury has been qualified.

. . . .

MR. ROSENZWEIG: Your Honor, if I could also add one other thing with regard to the proposed voir dire issue in addition to considering the full range, we want to make sure that the jurors, or prospective jurors at this point, can put out of their mind that they have been voir dired on the issue of capital murder. And, again, I will also point out that as far as I can – The precedents that I've found, and which I think you've cited, are really not on point because there was not a – The jury had already been sworn and had heard testimony at that time, as opposed to as an as-yet unsworn –

THE COURT: Very well. Thank you.

MR. ROSENZWEIG: I assume your ruling's the same.

THE COURT: I've denied it.

The extent and scope of voir dire examination is within the sound discretion of the circuit court, and the latitude of that discretion is wide. *Miller v. State*, 2010 Ark. 1, 362 S.W.3d 264. We do not reverse the circuit court's restriction of voir dire examination unless that discretion is clearly abused. *Id*. Abuse of discretion occurs when the circuit court acts arbitrarily or groundlessly. *Id*. The fact that the rules allow the circuit court to permit such additional questioning as he or she deems proper underscores the discretion vested in the circuit court. *Id*.

The State responds, alternatively, that the circuit court did not abuse its discretion in refusing to allow additional proffered voir dire. We agree.

We begin our analysis with a review of our observation in *Miller* that "in capital cases, no less than in non-capital cases, the Constitution does not dictate a particular voir dire process; it demands only that the process be 'adequate . . . to identify unqualified jurors.'" *Miller*, 2010 Ark. 1, at 13, 362 S.W.3d at 275 (quoting *United States v. Quinones*, 511 F.3d

289, 301 (2d Cir. 2007) (quoting *Morgan v. Illinois*, 504 U.S. 719, 729 (1992))). We also note that a trial court should stop the questioning as soon as it is evident that a juror is qualified or disqualified. *Perry v. State*, 277 Ark. 357, 642 S.W.2d 865 (1982). Finally, we note that the purpose of voir dire examination is to discover "bases for challenge for cause and for the purpose of gaining knowledge to enable the parties to intelligently exercise peremptory challenges." Ark. R. Crim. P. 32.2(a) (2013).

Our review of this record reveals no abuse of the circuit court's discretion here and no violation of Appellant's rights to due process and an impartial jury. First, the venire had been excused, and Appellant had exhausted all his peremptory challenges, although there were two alternates. Second, and most important, the record does not demonstrate that the circuit court acted groundlessly or arbitrarily without thought. The record shows that the circuit court had already determined that the jurors were qualified and therefore capable of rendering an impartial verdict. The jurors had been questioned about potential personal relationships with the parties, the nature of the crime, the age of the victim, and the effects of pretrial publicity. In addition, they had been questioned about punishment and the duty to consider mitigation evidence, as well as their duty to follow the law and render an impartial opinion regardless of their personal views. In addition, the record reflects that the circuit court considered the State's response to the proffered additional questions that the additional questions were unnecessary because the case was "in no different posture than if [the circuit court] had directed a verdict on capital murder down to first degree murder." The State did

not object or argue at that time that the specific terms of the plea agreement precluded further voir dire.

In short, the circuit court allowed Appellant to proffer his additional voir dire questions, considered the State's response thereto, and denied Appellant's request. In light of the circuit court's consideration, the previous voir dire that occurred and produced a qualified jury, and the facts that Appellant had exhausted his peremptory challenges and that the venire had been excused, we simply cannot say that an abuse of discretion occurred here or that Appellant has demonstrated that his trial was fundamentally unfair.

Appellant raises a second point on appeal that is contingent on a reversal. If we had reversed, Appellant asked that we order the mandatory recusal and prospective disqualification of the circuit court judge from further participation in this case based on the judge's alleged personal bias toward Appellant's defense team and in particular toward lead defense counsel, Jeff Rosenzweig. Because we affirm, however, the issue of the judge's bias and possible disqualification from future participation in this case need not be addressed.

In the instant case, Appellant received a sentence of life imprisonment. Pursuant to Arkansas Supreme Court Rule 4–3(i) (2013), we are required to review the record for all objections, motions, and requests that were decided adversely to Appellant. We acknowledge that, pursuant to the terms of Appellant's plea agreement, he waived any and all errors occurring prior to his sentencing trial. We also acknowledge that our review includes the three adverse rulings that occurred in Appellant's sentencing trial that Appellant called to our

attention in his brief, as well as the adverse ruling included in the State's supplemental abstract. No prejudicial error has been found in our review.

Affirmed.

BAKER and HART, JJ., dissent.

**KAREN R. BAKER, Justice, dissenting.** Because I do not agree that Pedraza can appeal from his guilty plea, I must respectfully dissent.

Pedraza admits that any error that occurred in this case prior to the entry of his guilty plea is waived. Therefore, the only error that he asserts on appeal is that he was not allowed to perform further voir dire on the seated jury after the entry of his guilty plea. He asserts that additional voir dire was necessary in order to determine if the unsworn jurors were biased against him because he had pleaded guilty to the lesser offense of first–degree murder.

Generally, a defendant may not appeal from a plea of guilty. Ark. R. App. P.—Crim. 1 (2013). However, in *Hill v. State,* 318 Ark. 408, 887 S.W.2d 275 (1994), and *Bailey v. State,* 348 Ark. 524, 74 S.W.3d 622 (2002), we outlined an exception to this general rule when the defendant appeals only an issue of sentencing, rather than a review of the guilty plea itself. This exception provides that the issue appealed from must be decided separate and apart from the guilty plea. The majority concludes that the record does not reflect that the preclusion of further voir dire was an integral part of the plea agreement. I disagree. The record reflects that Pedraza was made aware, prior to the plea agreement being finalized, that the jury as selected would be his sentencing jury. The prosecutor specifically stated, on the record:

We were in discussions last night. I told them that the only thing I would consider doing at this stage with a jury picked would be for him to plead guilty to first degree murder and the jury sentence him under the evidence (inaudible).

Further, shortly thereafter, the court stated:

What I will do then is this: I do want – – For the benefit of counsel and the state, I do want an under seal plea offer to the charge, whatever, the charge will be; and I want an agreement, naturally, that this same jury will be used. I'm not going to go through that again.

Clearly, the use of the selected jury was a requirement of Pedraza's guilty plea.

In *Henagan v. State*, 302 Ark. 599, 791 S.W.2d 371 (1990), we dismissed the appeal for lack of jurisdiction. The defendant had pleaded guilty and requested probation. The circuit court sentenced him to ten years, finding that the minimum sentence in the case was ten years and that he was not eligible for probation. Henagan appealed, arguing that the circuit court had erred in finding that he was not eligible for probation.

We distinguished the case from *Jones v. State*, 301 Ark. 510, 785 S.W.2d 217 (1990), where an appeal was allowed, on the basis that *Jones* had been an appeal from a posttrial motion, whereas *Henagan* was an appeal from the sentencing procedure, which was an integral part of acceptance of Henagan's plea of guilty. *Henagan*, 302 Ark. at 601, 785 S.W.2d at 372.

More recently, in *Spires v. State*, 2013 Ark. 6, this court dismissed the appeal for a lack of jurisdiction. In *Spires*, the defendant pleaded guilty to two counts of theft of property valued at over $2,500 for the theft of lottery tickets and one count of felony fraud for cashing the lottery tickets. The Lonoke County Circuit Court ordered that Spires pay restitution to Mallard Express. Spires appealed. This court held that the restitution order did not fall under

11

the exception outlined in *Hill* and *Bailey* because Spires agreed to the restitution as part of her guilty plea prior to entering it. In order for the exception to apply, the restitution must have been decided separate and apart from the guilty plea.

Here, as in *Spires* and *Henagan*, the issue on appeal was not decided separate and apart from the guilty plea. Both the State and the circuit court made it clear prior to Pedraza's entry of his guilty plea that the plea would only be accepted if the jury already impaneled sat for the sentencing phase of the trial. Therefore, the qualification of the jurors was a part of the plea agreement.

The majority emphasizes that there was no stipulation that the jury was qualified to serve and takes this as an indication that the preclusion of further voir dire was not an integral part of the plea agreement. However, the record makes clear that the circuit court's acceptance of the plea agreement was conditioned upon Pedraza's agreement that the seated jury would sentence him.

Additionally, Pedraza has not shown that any juror was prejudiced against him by his guilty plea. We will not presume prejudice where an error is alleged. *Hickman v. State*, 372 Ark. 438, 277 S.W.3d 217 (2008). An appellant must present specific facts to show prejudice because we will not reverse for harmless error. *Id.* Indeed, if Pedraza's true concern was that the jury was not qualified to sentence him on the reduced charge of first-degree murder, the only relief available to him would have been to request that the circuit court allow him to withdraw his guilty plea and proceed to trial on the original charge of capital murder. Instead,

Pedraza sought to keep the benefit of the plea agreement while rejecting the condition upon which the agreement was made.

Because Pedraza appeals from an issue that was a condition integral to the circuit court's acceptance of the plea agreement, we do not have jurisdiction to hear this appeal and it should be dismissed.

HART, J., joins in this dissent.

*Jeff Rosenzweig*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Eileen W. Harrison*, Ass't Att'y Gen., for appellee.