Cite as 2021 Ark. 22

# SUPREME COURT OF ARKANSAS
No. CR–20–269

| | |
|---|---|
| | **Opinion Delivered** February 11, 2021 |
| STATE OF ARKANSAS<br>PETITIONER | PETITION FOR WRIT OF CERTIORARI TO THE BENTON COUNTY CIRCUIT COURT |
| V. | [NO. 04CR-15-551] |
| MAURICIO A. TORRES<br>RESPONDENT | HONORABLE BRAD KARREN, JUDGE |
| | <u>PETITION DENIED</u>. |

**COURTNEY RAE HUDSON, Associate Justice**

Petitioner, the State of Arkansas, petitions this court for a writ of certiorari in response to the Benton County Circuit Court's order granting a mistrial as to both the guilt and penalty phases of Mauricio A. Torres's capital murder trial when the event precipitating the mistrial occurred after the jury found Torres guilty. The State argues that the circuit court exceeded its jurisdiction and committed an error that is apparent on the face of the record when it concluded that it was statutorily precluded from granting a mistrial only as to the penalty phase of the trial. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 6-1(a)(1) (2020). We deny the petition.

On November 15, 2016, a Benton County jury convicted Torres of capital murder and first-degree battery in the death of his six-year-old son Maurice "Isaiah" Torres. Torres was sentenced to death for the murder and twenty years' imprisonment and a fine for the battery. Torres appealed, and this court reversed. *Torres v. State*, 2019 Ark. 101, 571 S.W.3d

456. The State retried Torres. On March 5, 2020, a Benton County jury again found Torres guilty of the capital murder and first-degree battery of Isaiah. During the penalty phase of the trial, the State called as a witness Torres's adult stepson, who was shackled at his ankles due to his incarceration at the Arkansas Division of Correction. When the prosecutor asked the witness whether Torres had sexually abused him, the witness leapt out of the witness box and lunged toward Torres in an apparent effort to assault him or his attorneys. Multiple court personnel were required to subdue the witness. During the struggle, a table was overturned, and papers were scattered. In the aftermath, the circuit court instructed jurors to retire to the jury room.

After the jury left the courtroom, Torres's counsel moved for "a mistrial of this sentencing phase" and "of the sentencing proceeding." Initially, Torres's counsel stated that he was not moving for a mistrial "at guilt." The State opposed the motion, and the circuit court called for a lunch recess. After the recess, and outside the presence of the jury, the circuit court announced that it would declare a mistrial and that the mistrial would cover both the guilt and penalty phases of the trial. The defense then stated that it favored a mistrial that "covers the whole landscape, guilt and penalty." Despite the fact that the events leading to the mistrial happened after the jury found Torres guilty, the circuit court concluded that Arkansas Code Annotated section 5-4-602(3)(A) (Repl. 2013) requires that when a defendant is found guilty of capital murder, the same jury must sit again in order to determine the sentence. Ultimately, the circuit court entered a written order declaring a mistrial as to both the guilt and the penalty phases of the trial. The State moved for reconsideration of the circuit court's decision and argued that no statute or case law

prohibited a sentencing-only mistrial and that Arkansas Code Annotated section 5-4-616(a) and Arkansas Rule of Criminal Procedure 32.3 contemplated sentencing by a jury other than the one that decided guilt despite the provisions of Arkansas Code Annotated section 5-4-602(3)(A). After Torres responded, the circuit court, in a March 19, 2020 order, denied the State's motion.

On April 20, the State filed a petition for writ of certiorari seeking an order directing the circuit court to preserve the guilty verdict and conduct a new sentencing hearing only. Torres responded to the petition, requested oral argument, and sought supplementation of the record. On June 18, we granted the request for oral argument, authorized supplementation of the record, and ordered that the petition be taken as a case with briefing.

A writ of certiorari is extraordinary relief. *Ark. Game & Fish Comm'n v. Herndon*, 365 Ark. 180, 226 S.W.3d 776 (2006). There are two requirements that must be satisfied for this court to grant a writ of certiorari. *Zimmerman v. Cir. Ct. of Miller Cty.*, 2018 Ark. 264, 555 S.W.3d 406. First, there can be no other adequate remedy but for the writ of certiorari. *Pedraza v. Cir. Ct. of Drew Cty.*, 2013 Ark. 116, 426 S.W.3d 441. Second, a writ of certiorari lies only when (1) it is apparent on the face of the record that there has been a plain, manifest, clear, and gross abuse of discretion, or (2) there is a lack of jurisdiction, an act in excess of jurisdiction on the face of the record, or the proceedings are erroneous on the face of the record. *Id.* Certiorari is not to be used to look beyond the face of the record to ascertain the actual merits of a controversy, to control discretion, to review a finding upon facts, or to review the exercise of a court's discretionary authority. *Zimmerman*, 2018 Ark. 264, 555 S.W.3d 406. A petitioner for certiorari must bear a "very heavy burden[.]" *Skokos v. Gray*,

318 Ark. 571, 575, 886 S.W.2d 618, 620 (1994). This court has held that the writ of certiorari may not be used as a substitute for an appeal. *Conner v. Simes*, 355 Ark. 422, 429, 139 S.W.3d 476, 480 (2003).

This petition requires us to construe our penal statutes. We construe a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language, and if the language of the statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion to resort to the rules of statutory interpretation. *Thompson v. State*, 2014 Ark. 413, 464 S.W.3d 111. Significantly, penal statutes are to be strictly construed with all doubts resolved in favor of the defendant. *Smith v. State*, 2020 Ark. 410. Strict construction means narrow construction and requires that nothing be taken as intended that is not clearly expressed. *Metzner v. State*, 2015 Ark. 222, 462 S.W.3d 650. Additionally, in construing any statute, we place it beside other statutes relevant to the subject matter in question and ascribe meaning and effect to be derived from the whole. *Singleton v. State*, 2009 Ark. 594, 357 S.W.3d 891; *Bush v. State*, 338 Ark. 772, 2 S.W.3d 761 (1999). Statutes relating to the same subject must be construed together and in harmony, if possible. *Jester v. State*, 367 Ark. 249, 239 S.W.3d 484 (2006). We construe court rules using the same means and canons of construction used to interpret statutes. *Taffner v. State*, 2018 Ark. 99, 541 S.W.3d 430.

Two sentencing statutes, as well as Arkansas Rule of Criminal Procedure 32.3, are relevant to our analysis. We look first to the general rule governing jury sentencing in capital cases, which is set forth in Arkansas Code Annotated section 5-4-602(3)(A). That section provides that

[i]f the defendant is found guilty of capital murder, the same jury shall sit again in order to:

> (i) Hear additional evidence as provided by subdivisions (4) and (5) of this section; and

> (ii) Determine the sentence in the manner provided by § 5-4-603.

We next consider Arkansas Code Annotated section 5-4-616. There, the General Assembly crafted an exception to the general sentencing rule for capital cases. That statute in relevant part provides that

> (a) Notwithstanding § 5-4-602(3) that requires that the same jury sit in the sentencing phase of a capital murder trial, the following shall apply:

> (1)(A) Upon any appeal by the defendant when the sentence is of death, if the appellate court finds prejudicial error in the sentencing proceeding only, the appellate court may set aside the sentence of death and remand the case to the trial court in the jurisdiction in which the defendant was originally sentenced.

> (B) No error in the sentencing proceeding shall result in the reversal of the conviction for a capital felony.

> (C) When a capital case is remanded after vacation of a death sentence, the prosecutor may move the trial court to:

> > (i) Impose a sentence of life without parole, and the trial court may impose the sentence of life without parole without a hearing; or

> > (ii) Impanel a new sentencing jury[.]

> (2) If the prosecutor elects subdivision (a)(1)(C)(ii) of this section the trial court shall impanel a new jury for the purpose of conducting a new sentencing proceeding;

> . . . .

> (b) This section shall not be construed to amend a provision of § 5-4-602 requiring the same jury to sit in both the guilt and sentencing phases of the original trial.

Finally, Arkansas Rule of Criminal Procedure 32.3(c)(1) & (2) contemplates alternate jurors participating in a trial's penalty phase. Rule 32.3 provides that

> (c) In the case of a capital murder trial or any other bifurcated trial in which the court cannot fix punishment pursuant to Ark. Code Ann. § 5-4-103(b), and in which there are alternate jurors remaining after the jury has returned a verdict of guilty, the next alternate jurors, not to exceed two, shall be placed in the jury box along with the regular jurors. Any alternate jurors in addition to these two shall be dismissed. The trial will proceed with the penalty phase. When the jury retires to deliberate the penalty, the remaining alternate juror or jurors will again remain at the courthouse during deliberation.

> (1) If at any time after a verdict of guilty, but before a verdict fixing punishment, a juror who participated in the guilt phase of a capital murder trial or other trial described above dies, becomes ill, or is otherwise found to be unable or disqualified to perform his or her duties, such juror shall be discharged. The court may in its discretion, as an alternative to mistrial or any other option available by statute or these rules, replace such juror with the next alternate. However, in such event, the court may first give the defendant, with the agreement of the prosecution, the option to waive jury sentencing, in which case the court shall impose sentence, or to accept a verdict by the remaining jurors. If the defendant does not waive jury sentencing, or agree to accept a verdict by the remaining jurors, the trial will continue with the alternate participating in the penalty phase. In such event, the court shall instruct the jury to commence deliberation anew as to the sentencing phase only.

> (2) Notwithstanding Ark. Code Ann. § 5-4-602(3), which requires that the same jury sit in the sentencing phase of a capital murder trial, the court may in its discretion proceed pursuant to this rule and seat an alternate juror.

As set forth above, the first requirement for granting a petition for writ of certiorari is that no adequate remedy exists but for the writ of certiorari. *Pedraza*, 2013 Ark. 116, 426 S.W.3d 441. Here, no final order has been entered, and the State has no right to an interlocutory appeal. *See* Arkansas Rule of Appellate Procedure –Criminal 3(a) and (b) (2020). An appeal following a final order would not address the State's concern.

Additionally, Torres concedes that it is proper for this court to consider the State's arguments in a petition for writ of certiorari. Thus, there is no dispute that the State has met the first requirement for the writ in that it has no other adequate remedy.

The dispute is whether the State can meet the second requirement for a writ of certiorari and demonstrate that certiorari lies here. Certiorari will lie when it is apparent on the face of the record that there has been a plain, manifest, clear, and gross abuse of discretion, or there is a lack of jurisdiction, an act in excess of jurisdiction on the face of the record, or the proceedings are erroneous on the face of the record. *Pedraza*, 2013 Ark. 116, 426 S.W.3d 441. According to the State, the circuit court's erroneous reading of Arkansas Code Annotated section 5-4-602(3)(A) resulted in it exceeding its jurisdiction and committing an error on the face of the record. The State further argues that Torres "forfeited" any reliance on the "same jury" provisions of Arkansas Code Annotated section 5-4-602(3)(A) when he did not initially seek a mistrial as to both the guilt and penalty phases of the trial.

Resolution of this matter therefore turns on whether the circuit court correctly concluded that Arkansas Code Annotated section 5-4-602(3)(A) required a mistrial as to the guilt phase when the events necessitating the mistrial occurred after the jury found Torres guilty. Although the State argues that this was error, a close reading of the relevant authorities compels the opposite conclusion. Arkansas Code Annotated section 5-4-602(3)(A) sets forth the general rule that, in cases of capital murder, the same jury that determined guilt must consider the punishment. As the State notes, it is true that Arkansas Code Annotated section 5-4-602(3)(A) is not absolute. One exception is found in Arkansas

7

Code Annotated section 5-4-616(a), which provides that "if the appellate court finds prejudicial error in the sentencing proceeding only, the appellate court may set aside the sentence of death and remand the case to the trial court." However, that section applies "[u]pon any appeal" by the defendant. Here, no sentence was ever imposed. No appellate court found error. In fact, the defendant did not appeal at all. Instead, a witness caused a disruption during the penalty phase, and the circuit court declared a mistrial.

Significantly, the General Assembly clarified in section 5-4-616(b) that "[t]his section shall not be construed to amend a provision of § 5-4-602 requiring the same jury to sit in both the guilt and sentencing phases of the original trial." Thus, the plain language of the statute makes clear that the application of the exception found in section 5-4-616 is limited to sentencing errors that have been identified on appeal. In the absence of an error, an appeal by the defendant, or even a sentence imposed, section 5-4-616(a)(1) simply does not apply and section 5-4-616(b) directs us back to the general rule that the same jury that decided guilt in a capital case "shall sit again" to decide the penalty. The word "shall" means mandatory compliance unless it would lead to an absurd result. *Tollett v. Wilson*, 2020 Ark. 326, 608 S.W.3d 602. *Buckley v. State*, 349 Ark. 53, 76 S.W.3d 825 (2002), which the State cites, does not change this analysis. *Buckley* involved a case that was remanded for resentencing. There, we reversed Buckley's two life sentences for delivery of controlled substances. Buckley argued that without the "same jury" to consider sentencing, he could receive only the minimum sentence. We stated that the absence of a specific statute authorizing a different jury did not prevent the circuit court from empaneling a new jury for resentencing. However, *Buckley* was not a capital case. As we have often said, death is

different. *See, e.g., Liggins v. State*, 2016 Ark. 432, 505 S.W.3d 191. Most importantly, our capital-sentencing statutes, which were not applicable in *Buckley*, require that the "same" jury deciding guilt must decide the sentence. Perhaps in drafting section 5-4-602(3)(A), the General Assembly created the unitary jury rule in order to afford capital defendants the benefit of any "residual doubt" that jurors might have after a conviction. *See Lockhart v. McCree*, 476 U.S. 162, 181 (1986). Regardless, the language of the statute is too plain to ignore. Moreover, to the extent that *Buckley* might provide guidance, it is worth noting that it involved a remand after this court found an error in sentencing and was therefore in an altogether different procedural posture.

Likewise, Arkansas Rule of Criminal Procedure 32.3(c)(1) & (2) does not provide a basis for granting the writ. Rule 32.3 applies when "a juror who participated in the guilt phase of a capital murder trial . . . dies, becomes ill, or is otherwise found to be unable or disqualified to perform his or her duties[.]" Here, no juror became incapacitated or was in any way disqualified. The issues in this case had nothing to do with any particular juror. Although Rule 32.3 may be viewed generally as an exception to the requirements of section 5-4-602, it does not apply to the facts of this case.

In sum, the facts in this case do not fit within either section 5-4-616(a) or Rule 32.3. Consequently, the unitary jury rule found in section 5-4-602(3)(A) applies. Thus, the circuit court did not commit an error on the face of the record and did not exceed its jurisdiction in declaring a mistrial as to the guilt phase of the trial. Instead, the circuit court correctly determined that the unique circumstances present in this case required a mistrial as to both the guilt and penalty phases of the trial.

Finally, although the State contends that Torres "forfeited" any claim to the "same jury," we disagree. First, the alleged forfeiture occurred in the immediate aftermath of an extraordinary event where Torres and his attorneys were almost pinned against a wall by a counsel table that the State's witness had overturned as he lunged toward them. We question whether any such spontaneous remarks should be held to the same standard as motions that might be made at a typical trial, or positions that are taken after thoughtful consideration in an orderly courtroom. Secondly, Torres's initial motion was not his final word on the matter. After a lunch recess, the circuit court announced that it believed a mistrial was required as to both the guilt and penalty phases of the trial. Torres modified his position to agree with the circuit court. At that point, Torres had no reason to object to the circuit court's decision or to expand his motion for a mistrial to include the guilt phase. Accordingly, Torres did not waive any claim to the "same jury" requirements of section 5-4-602(3).

Because we deny the State's petition, Torres's alternative argument that he should be allowed to pursue an appeal of his guilty verdict before sentencing is moot.

Petition denied.

WOMACK, J., dissents.

**SHAWN A. WOMACK, Justice, dissenting.** What transpired during the sentencing phase had no bearing whatsoever on the concluded guilt phase of this trial. Despite the absence of any prejudicial error that would warrant upsetting the jury's verdict of guilt, the verdict has been erased and Mauricio Torres is given a third bite at the apple regarding the murder of his son. The majority holds that section 5-4-602(3)(A) requires this outcome. In

10

their view, this provision forbids the circuit court from conducting a new sentencing phase alone. Though they offer a thoughtful and persuasive opinion in support of this conclusion, I must respectfully dissent. The circuit court was without jurisdiction to order a post–verdict mistrial with respect to the guilt phase in this case. We should issue the writ and, given the extraordinary circumstances present in this case, allow Torres to appeal his conviction of guilt prior to remand for sentencing.

To understand the error of the majority's decision, one must understand the interplay between our bifurcated capital trial structure and basic principles of mistrial. In Arkansas, capital trials are split into two "separate and distinct" phases. *See Hill v. State*, 318 Ark. 408, 412, 887 S.W.2d 275, 277 (1994);[1] Ark. Code Ann. § 5-4-602 (capital sentencing statute). In the first, the guilt phase, the jury hears all evidence relevant to the capital murder charge and determines the defendant's guilt or innocence. *See* Ark. Code Ann. § 5-4-602(1). If the jury renders a verdict of guilt, a separate sentencing phase commences. *Id.* § 5-4-602(3)(A). The sentencing phase is, "in essence, a trial in and of itself, in which new evidence may be submitted." *Hill*, 318 Ark. at 413, 887 S.W.2d at 278. In that phase, the jury considers aggravating and mitigating evidence and determines whether to impose a sentence of death. *See* Ark. Code Ann. § 5-4-602(3)(A).

Of course, as the majority emphasizes, the bifurcated capital trial structure includes a unitary jury requirement: "If the defendant is found guilty of capital murder, the *same jury*

---

[1] *Hill* is not a death penalty case. Rather, it involves a bifurcated criminal trial under the felony jury trial statute. *See* Ark. Code Ann. § 16-97-101. That provision, like the capital sentencing statute, involves separate guilt and penalty proceedings. *Compare id.*, *with* Ark. Code Ann. § 5-4-602(1)–(3). Accordingly, *Hill*'s discussion regarding the "separate and distinct" nature of the general bifurcation structure is applicable here.

shall sit again in order to" hear aggravating and mitigating evidence and determine the sentence. *Id*. (emphasis added). That is precisely how Torres's sentencing trial began. Once the sentencing mistrial was declared, it became impossible for the "same jury" to determine Torres's sentence. But how does this impact the jury's verdict of guilt? After searching for an applicable exception to the unitary jury requirement, and finding none, the majority concludes that a sentencing mistrial requires a guilt phase mistrial. At first glance, this appears to be the logical result under the terms of the statute. The core principles and significance of a mistrial decision, however, compel a different result.

"[A] criminal trial is, even in the best of circumstances, a complicated affair to manage." *United States v. Jorn*, 400 U.S. 470, 479 (1971). During the course of a criminal trial, an error may arise "so prejudicial that it affects the fundamental fairness of the trial or prevents justice from being served." *See King v. State*, 361 Ark. 402, 405, 206 S.W.3d 883, 885 (2005). When this occurs, the circuit court may resort to the "extreme and drastic remedy" of mistrial. *Id*. Though the circuit court enjoys wide discretion over the mistrial decision, *see id*., its discretion is not boundless.

It is evident that the circuit court does not have authority to declare mistrial after the jury's verdict is rendered. As Justice Story's seminal opinion in *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824), explains, "the law has invested Courts of justice with the authority to discharge a jury from giving any verdict." Legal dictionaries and encyclopedias similarly presume that a mistrial must be declared prior to the verdict. *See, e.g.*, *Black's Law Dictionary* (11th ed. 2019) ("Mistrial" is defined as "1. A trial that the judge brings to an end without a determination on the merits because of a procedural error or serious misconduct

12

occurring during the proceedings. 2. A trial that ends inconclusively because the jury cannot agree on a verdict."); 75B Am. Jur. 2d *Trial* § 1408 (Feb. 2021 update) ("A court may declare a mistrial before the jury returns a verdict but, after a verdict has been returned, the trial is complete."). The Ninth Circuit Court of Appeals aptly observed that "the requirement that a mistrial be declared only if there is a 'manifest necessity' necessarily assumes that such a declaration may come only before the conviction." *United States v. Alvarez-Moreno*, 657 F.3d 896, 900 (9th Cir. 2011). This assumption is consistent with our requirement that motions for mistrial must be raised prior to the jury's verdict. *See Walker v. State*, 308 Ark. 498, 503, 825 S.W.2d 822, 825 (1992). Moreover, this requirement has been explicitly recognized across numerous state and federal jurisdictions.[2]

Under our bifurcated capital trial procedure, the jury rendered a verdict of guilt at the close of the guilt phase. Once the jury announced its verdict in open court and a jury poll, if requested, indicated unanimity, the guilty verdict was final and complete. *See* Ark. Code Ann. § 16-64-119 (jury verdict and polling). It follows that the circuit court's authority to order a guilt phase mistrial diminished once the jury announced its verdict and the guilt phase concluded. The post-verdict mistrial ordered during the sentencing phase exceeded this authority and should be vacated as a procedural nullity.

---

[2] *See, e.g.*, *Alvarez-Moreno*, 657 F.3d at 900 (pre-verdict mistrial "limitation is clearly . . . implicit assumption"); *Georgia v. Sumlin*, 637 S.E.2d 36, 37 (Ga. 2006) ("mistrial, by its very nature, seeks to end the trial proceedings before a verdict is rendered in order to ensure that the defendant may receive a fair trial"); *North Carolina v. O'Neal*, 312 S.E.2d 493, 495 (N.C. Ct. App. 1984) ("retroactive declaration of a mistrial . . . has no valid basis in policy or law"); *West Virginia v. Corey*, 758 S.E.2d 117, 130 (W.Va. 2014) ("declaring a mistrial after the jury verdict is rendered is improper") (internal citation omitted); *United States v. Rivera*, 634 Fed. App'x 213, 215 (10th Cir. 2015) (same); *Colorado v. Jameson*, 580 P.2d 805, 806–07 (Colo. 1978) (same).

The majority's decision otherwise is not only inconsistent with the principles of mistrial but could present significant constitutional issues in future cases. Following a mistrial, a defendant may be tried again for the same crime only (1) if he consents to the dismissal; or (2) if the circuit court determines that the dismissal is required by "manifest necessity." *See Arizona v. Washington*, 434 U.S. 497, 505 (1978); *see also Koster v. State*, 374 Ark. 74, 82–83, 286 S.W.3d 152, 160 (2008). Otherwise, retrial is barred by double jeopardy. *Id.* Torres consented to mistrial and explicitly waived any double jeopardy concerns. Had he opposed the guilt phase mistrial, however, the majority's mandatory mistrial decision may have precluded reprosecution unless such an inflexible, categorical approach satisfies the "manifest necessity" requirement.

Given the majority's decision, the Arkansas General Assembly should review the "same jury" provision and consider an amendment that would permit a new sentencing jury in the event of a mistrial. Of the jurisdictions with a unitary jury requirement, at least twenty-one allow some form of exception.[3] These exceptions do not undermine the "same jury" requirement nor leave it optional with the parties. Instead, they are tailored to protect the defendant's and the public's interest in the efficient resolution of criminal trials by allowing a new sentencing jury when the original jury can no longer serve. A similar

---

[3]*See, e.g.*, Ala. Code § 13A-5-46(g); Cal. Penal Code § 190.4(c); Conn. Gen. Stat. Ann. § 53a-46a(b); Del. Code Ann. tit. 11, § 4209(b); Fl. Stat. Ann. § 921.141(1); Idaho Code Ann. § 19-2515(5)(c); 720 Ill. Comp. Stat. Ann. 5/9-1(d)(2)(C); La. Code Civ. Proc. Ann. art. 905.1(b); Md. Code Ann., Crim. Law § 2-303(c)(2)(iii); Miss. Code Ann. § 99-19-101(1); Neb. Rev. Stat. Ann. § 29-2520(2)(b)(ii); N.H. Rev. Stat. Ann. § 630:5(II)(b)(2); N.J. Stat. Ann. § 2C:11-3(c)(1); N.Y. Crim. Proc. Law § 400.27(2); N.C. Gen. Stat. Ann. § 15A-2000(a)(2); Or. Rev. Stat. Ann. § 163.150(5)(b); Tenn. Code Ann. § 39-13-204(k); Utah Code Ann. § 76-3-207(1)(c)(ii); Wash. Code Ann. § 10.95.050(3)–(4); Wyo. Stat. Ann. § 6-2-102(b); 18 U.S.C. § 3593(b)(2)(c).

exception in Arkansas law would shield future cases against the unnecessary delays and waste of judicial resources that resulted in this case.

As a final point, upon granting the writ, I would remand this case to the circuit court for entry of an order reflecting the verdict of guilt so that Torres could lodge an appeal. Bifurcated criminal appeals are generally barred based on our policy against piecemeal litigation. Indeed, the "general policy against piecemeal appeals takes on an added weight in criminal cases, where the defendant is entitled to a speedy resolution of the charges against him." *Will v. United States*, 389 U.S. 90, 96 (1967). In this case, however, a speedy resolution would be furthered by a bifurcated appeal. As Torres's counsel explained at trial, a bifurcated appeal would ensure that the sentencing jury would be given accurate information regarding the conviction of guilt. Should the guilt conviction be reversed, this approach would spare the parties from conducting a wasteful sentencing trial on a faulty verdict of guilt. In sum, I would grant the writ and then, based on the extraordinary circumstances present in this case, allow Torres to seek a bifurcated appeal of his guilt conviction at this time.

I respectfully dissent.

*Leslie Rutledge*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen.; and *Vada Berger*, Sr. Ass't Att'y Gen., for petitioner.

*Jeff Rosenzweig, George (Birc) Morledge*, and *William O. James Jr.*, for respondent.